**GERRY SCHMITT & COMPANY**
v.
**UNITED STATES.**
**C.D. 4496; Court No. 69/34375-9211.**

United States Customs Court.
Dec. 27, 1973.

13. Tariff Classification Study, Schedule 2, pp. 27, 28.

John C. Ray, for plaintiff.

Irving Jaffe, Acting Asst. Atty. Gen., John A. Gussow, trial atty., New York City, for defendant.

WATSON, Judge:

This case involves "grader blade" steel shapes, imported from Lake Ontario Steel Company, Whitby, Ontario, Canada. The subject merchandise was classified and assessed under item 608.46 of the Tariff Schedules of the United States (TSUS) at 9.5 per centum ad valorem [1] and under item 664.05 of the said tariff schedules at 9 per centum ad valorem.[2] Plaintiff claims the importa-

1. Item 608.46 reads as follows:
 Bars of steel:
 \* \* \* \* \* \* \* \* \* \* \* \* \*
 Other bars:
 Other than alloy steel:
 Not cold formed:
 Not coated or plated with metal:
 \* \* \* \* \* \* \* \* \* \* \* \* \*
 Valued over 5 cents per pound .............. 9.5% ad val.

2. Item 664.05 reads as follows:
 Mechanical shovels, coal-cutters, excavators, scrapers, bulldozers, and other excavating, levelling, boring and extracting machinery, all the foregoing, whether stationary or mobile, for earth, minerals, or ores; pile drivers; snow plows, not self-propelled; all the foregoing and parts thereof. .................................................... 9% ad val.

tions are properly classifiable and dutiable at the rate of 0.1 cent per pound under item 609.80, TSUS.[3]

The importer of record, a licensed customs broker, is contesting through the subject protest the denial of its requests for reliquidations of some fifty-nine entries, eight of which were abandoned at the trial (Nos. 31256, 31257, 32105, 32106, 32107, 32108, 33906, and 41786, liquidated from December 1967 through February 1968). These entries were made at the port of Detroit, Michigan. The fifty-one remaining entries were liquidated on various dates, commencing on June 24, 1968. At this time, it is undisputed that a timely protest against the above liquidations was never filed. However, after a number of entries had been liquidated, plaintiff, on April 2, 1968, wrote to the Bureau of Customs in Washington, D. C., requesting a ruling on the classifications, claiming that the correct classification should be as claimed above.

On March 29, 1969, plaintiff received from Salvatore Carmagno, Acting Director, Division of Tariff Classification Rulings, a ruling dated March 28, 1969 (some 9 months after liquidation of the involved entries commenced) wherein he substantiated plaintiff's contention pertaining to the proper classification of the importations. Upon receipt of the aforementioned ruling, plaintiff discovered all the entries had been liquidated contrary to this new promulgation.

Time for protesting the liquidations having elapsed, plaintiff resorts to section 520(c)(1), Tariff Act of 1930, as amended,[4] in an attempt to salvage the entries covered by the involved protest. This request for relief under section 520(c)(1) was denied by the district director of customs on May 28, 1969 for the reason that the subject of the request involved an "error in the construction of law." It is from this denial of plaintiff's requests for reliquidations that the subject protest was filed on July 25, 1969. Plaintiff claims that the failure to withhold or defer appraisements and/or liquidations during the pendency of an administrative request to the Bureau of Customs in Washington, D. C., is in derogation of its rights under 92 Treas.Dec. 147, T.D. 54387(3) (1957),[5] expressing the policy of the Bu-

---

3. Item 609.80 reads as follows:
　　Angles, shapes, and sections, all the foregoing, of iron or steel, hot rolled, forged, extruded, or drawn, or cold formed or cold finished, whether or not drilled, punched, or otherwise advanced; sheet piling of iron or steel:
　　　　Angles, shapes, and sections:
　　　　　　Hot rolled; or, cold formed weighing over 0.29 pound per linear foot:
　　　　　　　　Not drilled, not punched, and not otherwise advanced:
　　　　　　　　　　Other than alloy iron and steel. .................. 0.1¢ per lb.

---

4. Section 520(c)(1) reads in pertinent part as follows:
　　(c) Notwithstanding a valid protest was not filed, the Secretary of the Treasury may authorize a collector to reliquidate an entry to correct—
　　(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, appraisement, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, appraisement, or transaction, or within sixty days after liquidation or exaction when the liquidation or exaction is made more than ten months after the date of the entry, appraisement, or transaction; * * *.

5. T.D. 45387(3) reads as follows:
　　APPRAISEMENT; LIQUIDATION
　　(3) *Deferment of appraisement or liquidation; T.D. 53902(2) superseded.*—It is

reau of Customs with respect to the suspensions of liquidations.

It is defendant's position that no requests for suspensions of the liquidations of these importations were ever made. Defendant additionally argues that even were such requests made, the district director's failure to comply with them would have been an exercise of his discretion and a decision of a legal nature which could be challenged only by a protest filed within 60 days of the liquidations in question.

■ After studying the record and the law, I find myself in full agreement with defendant on all points. I am not persuaded that requests for suspensions of liquidations were ever made on behalf of the importer. Furthermore, even were such requests made, I am of the opinion it was within the discretion of the district director to suspend these liquidations. If he failed to do so, the plaintiff's only remedy was a challenge to the unwanted liquidations by means of a timely protest. Having allowed the liquidations to pass unchallenged they became final. The later ruling favorable to plaintiff operates only prospectively and, while it is undoubtedly a source of regret to plaintiff that it did not somehow preserve its right to challenge the earlier liquidations, it cannot revive its right by utilizing an administrative method designed to rectify mistakes other than those which are decisional in nature.

Regarding the question of whether suspensions of liquidations were ever requested of the import specialist, Mr. Petton, by Mrs. Schmitt, the customs broker and importer of record, I incline to the view that no such requests were made. There is conflicting testimony on this point. For example, Mrs. Schmitt recalls sending Mr. Petton a copy of her letter to the Director of Tariff Classification Rulings requesting a ruling on these importations. Mr. Petton denied receiving a copy. Mrs. Schmitt recalled making oral requests to Mr. Petton that liquidations of the subject merchandise be withheld. Mr. Petton denied receiving such requests. I discern a lack of definiteness and precision in Mrs. Schmitt's testimony which detracts from its persuasiveness. The lack of support for her assertions from a witness who was her assistant during the period involved further weakens plaintiff's proof on this point. In short, plaintiff has failed to prove requests were made to suspend the liquidations of the entries involved herein.

■■ As noted earlier, even had requests for suspensions been made and rejected by the district director, the last possible appropriate challenge by plaintiff would have been to protest the unwanted liquidations within 60 days. A request by an importer for suspension of liquidations does not automatically activate such suspension. T.D. 54387(3), insofar as it is relevant to this case, indicates that only when the appropriate customs official submits a question of valuation or classification to the Bureau of Customs or Treasury Department are liquidations to be suspended. Thus,

---

the policy of the Bureau of Customs that appraisers shall withhold appraisement or collectors suspend liquidation of entries (1) to the extent and under the conditions specified in the Customs Regulations and the Customs Manual, (2) as directed by the Bureau in circulars, and (3) during the pendency before the Bureau or the Treasury Department of questions of valuation or classification submitted at the request of the importer for an administrative review of the official action contemplated. No additional deposit of duty shall be required in connection with withheld appraisements or suspended liquidations unless in special situations the Bureau should so direct. Appraisers shall not withhold appraisement of merchandise or collectors the liquidation of entries simply because the issues involved may be before the court in pending reappraisement or classification litigation since sections 501 and 514, Tariff Act of 1930, as amended, provide the importer an appropriate remedy. The Bureau's previous statement of policy in T.D. 53902(2) is superseded hereby. Bureau letter to the Appraiser of Merchandise, New Orleans, Louisiana, dated May 13, 1957. (332.1)

even when the aforementioned procedure is considered, the suspension of the liquidation is still dependent on a decision by the appropriate customs official, not merely on the request by the importer. I do not read T.D. 54387(3) as granting the importer a right to challenge a refusal to suspend liquidations apart from the right to challenge the undesired liquidations by timely protest. It merely establishes an administrative procedure for the guidance of the appropriate customs official and is an expression of policy regarding the withholding of appraisements or liquidations. If a liquidation does take place contrary to the wishes of an importer, the appropriate response is a timely protest, raising the issues which presumably are being pressed administratively and are the reason behind the request for suspension.

 What the plaintiff is actually seeking to correct here is a purported error of judgment on the part of the district director in construing the law. The court's holding in Fibrous Glass Products, Inc. v. United States, 63 Cust. Ct. 62, 64–65, C.D. 3874 (1969), finds substantial application to the case at bar:

Plaintiff seeks to have his entry reliquidated in conformity with the decision in C.A.D. 809 [United States (Index Industrial Corp., Party in Interest) v. National Starch Products, Inc. [318 F.2d 737], 50 CCPA 1 (1962)], contending that the collector by classifying the merchandise in this case differently from similar merchandise in C.A.D. 809 had made a mistake of fact. Plaintiff's request for relief to correct a mistake of fact under section 1520(c)(1) filed nine and a half months after liquidation is actually an attempt to correct an error of judgment on the part of the collector in making a classification of the merchandise under the wrong paragraph of the Tariff Act of 1930, which is a mistake in the applicable law. A finding that merchandise is covered by a certain paragraph of the tariff act is in the nature of a conclusion of law. United States v. Imperial Wall Paper Co., 14 Ct.Cust.Appls. 280, T.D. 41886 (1926). Section 1520(c)(1) expressly excepts mistakes of law from its coverage. Plaintiff's remedy was to file a protest under section 1514 of Title 19 of U.S.C.A. (section 514, Tariff Act of 1930, as amended) within sixty days after liquidation.

Since plaintiff is seeking to correct an error amounting to an error in the construction of a law and its protest was filed after the expiration of the time limitation imposed by section 1514 of Title 19 of U.S.C.A. (section 514, Tariff Act of 1930, as amended) for the filing of protest to correct such errors the court is without power to entertain it. It, therefore, follows that the claim presented in plaintiff's protest is not before the court for decision, and the protest must be dismissed for lack of jurisdiction.

See also, United States v. Wyman & Co., 4 Ct.Cust.Appls. 264, T.D. 33485 (1913); United China & Glass Co. v. United States, 66 Cust.Ct. 207, 211, C.D. 4191 (1971).

In light of the above holding, and upon consideration of the facts at bar, it is obvious that the district director has no duty to correct his alleged error in response to requests for reliquidations as said error is a mistake in the construction of law and as such is not provided for in section 520(c)(1).

Plaintiff here has erroneously presumed that its claim is embraced by section 520(c)(1). Here, the record not only manifestly demonstrates, without contradiction, that no ground exists permitting suspensions of liquidations of the subject entries, but Mr. Petton, the responsible Team Leader Import Specialist and witness for the defendant, would not be compelled to honor a request to suspend liquidation, even if an importer requested him to do so and sent a letter requesting a ruling on the matter to the Bureau of Customs in Washington, D.C.

Any time such a procedure was requested, it would be in the pure judgment of the appropriate customs official involved as to whether or not the same should be granted.

■ Thus, I conclude a decision of pure judgment, i. e., whether to suspend liquidation or not, even by request, is only capable of being judicially questioned by a timely protest against the liquidation itself, not by way of section 520(c)(1). United States v. Imperial Wall Paper Co., 14 Ct.Cust.Appls. 280, T.D. 41886 (1926); United China & Glass Co. v. United States, *supra*; Fibrous Glass Products, Inc. v. United States, *supra*; H. H. Elder & Co. v. United States, 20 Cust.Ct. 61, C.D. 1084 (1948).

Consequently, the failure to suspend the herein liquidations and the liquidations themselves cannot constitute any conduct correctable under section 520(c)(1), and accordingly, plaintiff's sole remedy was the filing of a timely protest pursuant to section 514, Tariff Act of 1930.

Judgment will be entered accordingly.

