The UNITED STATES, Appellant,

v.

A. N. DERINGER, INC., Appellee (two cases).

Appeal Nos. 78–7, 78–8.

United States Court of Customs and Patent Appeals.

March 15, 1979.

---

Barbara Allen Babcock, Asst. Atty. Gen., Washington, D.C., David M. Cohen, Branch Director, Joseph I. Liebman, Glenn E. Harris, New York City, for the U. S.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

BALDWIN, Judge.

These appeals by the United States are from judgments of the United States Customs Court, 80 Cust.Ct. 17, C.D. 4731, 447 F.Supp. 453 (1978) and 80 Cust.Ct. 19, C.D. 4732, 447 F.Supp. 451 (1978), in actions to recover duties paid on foodstuffs refused admission which were exported to the coun-

try of origin. The Customs Court dismissed both actions.

We vacate the judgment in No. 78–7 and remand to the Customs Court. We affirm the judgment in No. 78–8.

### Proceedings Below

The facts in these appeals are quite simple. Certain foodstuffs from Canada which were subject to laws administered by the U.S. Food and Drug Administration (hereafter FDA) imposing various labeling requirements were entered at a New York border crossing. After entry, the goods were found by the FDA to not have been labeled in conformity with the law. Appellee was given appropriate notices of such non-conformity and of the detention of the goods to await a hearing. Appellee apparently did not avail itself of the right to contest the determinations at an FDA hearing, nor did it relabel the goods to conform with the law. Thereupon, appellee was given a formal notice of "refusal of admission" on each entry.

Upon entry, estimated duties were deposited for each shipment. Later, the District Director of Customs liquidated all of the entries dutiable "no change." In 78–7, the liquidation occurred after the formal notice refusing admission to the United States had been issued and 17 days after the goods had been exported under "Customs supervision." In 78–8, the liquidation occurred *before* the notice of "refusal of admission" issued and prior to exportation.[1] Appellee filed a protest against the liquidations involved in appeal No. 78–7 within the prescribed 90 days. In appeal No. 78–8, appellee permitted the 90 day period to lapse without lodging a protest regarding the liquidation of the entry, filing instead, at a later date, a protest against the refusal of the District Director to *re*liquidate the entry on the premise that the original liquidation had been actuated by "clerical error" or "inadvertence" or "mistake of fact" within the meaning of 19 U.S.C. § 1520(c)(1).[2]

1. The chronology of events is as follows:

A. Customs Appeal No. 78–7

| Entry No. | Date of Entry | Detention Notice | Refusal Notice | Liqui- dation | Export |
|---|---|---|---|---|---|
| 110425 | 8/28/72 | 8/29/72 * | 9/8/72 * | 9/29/72 | 9/12/72 |
| 111332 | 8/29/72 | 8/29/72 | 9/8/72 | 9/29/72 | 9/12/72 |
| 112509 | 9/6/72 | 8/29/72* | 9/8/72* | 9/29/72 | 9/12/72 |

B. Customs Appeal No. 78–8

| Entry No. | Date of Entry | Detention Notice | Refusal Notice | Liqui- dation | Export |
|---|---|---|---|---|---|
| 174407 | 5/30/72 | 6/7/72 | 6/27/72 | 6/23/72 | 6/27/72 |

\* The stipulation of fact before the Customs Court is apparently erroneous. The record certified to this Court shows the detention notices for Entry Nos. 110425 and 112509 to be 8/31/72 and 9/5/72, respectively. Similarly the refusal notices are dated 9/12/72 and 9/21/72 respectively. The multiple notices for Entry No. 111332 were apparently confused with those for the remaining entries.

2. 19 U.S.C. § 1520(c)(1) provides:

(c) Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the customs service within one year after the date of entry, or transaction, or within ninety days after liquidation or exaction when the liqui-

The cases were submitted to the Customs Court on stipulations of fact. In each instance, the court noted that under its view of the Customs Regulations, section 12.6,[3] the liquidation was void:

> The purpose of Customs Regulation, section 12.6, is apparent on its face. Liquidation in customs is the finalization of the customs entry process. This act constitutes a settlement of duties due the United States and finalizes the liability of the importer. This action under section 514 of the Tariff Act of 1930, as amended, is final and conclusive upon all parties unless a protest is filed against a valid liquidation or action of customs. It is certainly reasonable for customs to suspend liquidation on items such as food, drugs, devices and cosmetics until it is determined if entry under the law is permitted. If not permitted, as in the case at bar, such liquidation would be a useless act since the merchandise if exported or destroyed pursuant to the statute and regulations would result in a refund of the duties deposited. 19 U.S.C. § 1558(a).
>
> In view of the circumstances, I am constrained to find the liquidation to be in violation of section 12.6 of the customs regulations and therefore void. [4] [This language is found in both opinions.]

The government argues that these judgments grant appellee the right to obtain refunds of duties because the Customs Court held the liquidations complained of

did not, in law, ever occur. Accordingly, the government argues that, in effect, it lost in the court below and hence it appeals.

## OPINION

■ Initially we should make clear why the government which obtained the dismissal of both cases in the Customs Court, has standing to appeal those decisions and why we then have jurisdiction to hear the cases. A necessary part and parcel of the judgments of the Customs Court were holdings that each of the liquidations in issue lacked legal existence. Were these judgments to be affirmed without modification, the Customs Service would then be under a statutory mandate to liquidate the entries for a "first" time and these acts would spur the running of the period for protesting the liquidations. The importer would be given a new cause of action without any regard to the tardiness of the protest in No. 78–8, or, indeed, to the sufficiency of the cases presented to the Customs Court involved in this appeal. It is not beyond reason that, given a second bite at the apple, appellee would be able to make the necessary "good faith" showings under 19 U.S.C. § 1558(a)(2)[5] and recover duties in the belatedly protested No. 78–8. Nevertheless, it is the addition of the causes of action against the government resulting from the decisions of the court below that provides it with the standing to appeal.

---

dation or exaction is made more than nine months after the date of the entry, or transaction * * *.

3. This regulation provides:
§ 12.6 Suspension of liquidation.
(a) The liquidation of each entry covering merchandise, the subject of § 12.1,* shall be suspended until it is determined whether admission of the merchandise into the United States is permitted under the law. [* § 12.1 covers, inter alia, food.]

4. The government avers in its brief (No. 78–8) that this section "no longer exists" and as a result "what was, according to the trial court, a 'void' liquidation on September 29, 1972 was, to all intents and purposes, a perfectly valid liquidation" after the alleged repeal.
It appears that § 12.6 has continuously existed in one form or another since the liquidation

in issue. For about five years, this regulation has been known as § 159.55(a). See 38 Fed. Reg. 17482, (July 2, 1973).

5. 19 U.S.C. § 1558(a)(2) provides, in pertinent part:
(a) No remission, abatement, refund, or drawback of estimated or liquidated duty shall be allowed because of the exportation or destruction of any merchandise after its release from the custody of the Government, except in the following cases:
\* \* \* \* \* \*
(2) When prohibited articles have been regularly entered in good faith and are subsequently exported or destroyed pursuant to a law of the United States and under such regulations as the Secretary of the Treasury may prescribe * * *.

*Appeal No. 78–7*

 The decisions of the Customs Court are based solely on a particular construction of the meaning of § 12.6 of the Customs Regulations. The Customs Court considers the rule to say that *if* the goods are found to be inadmissable to the United States, then a liquidation is not allowed.[6] We do not agree with this interpretation of the regulation. The very words of the regulation speak only of determining *"whether* admission * * * is permitted."* (Emphasis ours.) In our view, a liquidation is in conformance with this regulation only if it is performed at some time subsequent to the time the § 12.6 determination is made. Whether that determination results in the goods being admitted or not is simply irrelevant to the question of a liquidation's conformance with § 12.6.[7]

The statutory path that must be followed in making the aforementioned determina-

**6.** Although the Customs Court emphasized in No. 78–7 that the goods were liquidated some time after their exportation, that fact alone does not appear to be the reason for the holding. In No. 78–8, liquidation occurred prior to exportation and yet the Court's holding was the same. Clearly, the common reason for those holdings was not the relative times of liquidation but rather the fact that the goods were refused entry.

**7.** It must be understood that we are not holding that the liquidation is, in all respects, correct. We only hold that it conforms to § 12.6 of the Customs Regulations.

**8.** That determination is made via the process outlined in 21 U.S.C. § 381:

(a) The Secretary of the Treasury shall deliver to the Secretary of Health, Education, and Welfare, upon his request, samples of food, drugs, devices, and cosmetics which are being imported or offered for import into the United States, *giving notice* [*] *thereof to the owner or consignee,* who may appear before the Secretary of Health, Education, and Welfare and have the right to introduce testimony. * * * If it appears from the examination of such samples or otherwise that * * (3) such article is adulterated, misbranded, or in violation of section 355 of this title, then such article shall be refused admission, except as provided in subsection (b) of this section. The Secretary of the Treasury shall cause the destruction of any such article refused admission unless such article is exported, under regulations prescribed by the Secretary of the Treasury, within ninety days of

tion also requires a dated notice of refusal be given to the owner or consignee, as the situation dictates.[8] The date of the statutory notice is the time of determination found in § 12.6 of the Customs Regulations.

 Since the liquidations in this case were made after the notice of refusal issued, the liquidations complied with § 12.6 of the Customs Regulations. Accordingly, we *vacate* the judgment of the Customs Court in this case and *remand* it for a consideration of appellee's claim for refund of duties.[9]

*Appeal No. 78–8*

 In this case, the liquidation preceded the notice of refusal by several days. Despite the government's arguments to the contrary,[10] this action cannot be said to be in conformance with § 12.6.

the *date of notice* [*] *of such refusal* or within such additional time as may be permitted pursuant to such regulations. [* The dates of both the notices of detention and hearing as well as the notices of refusal are found in footnote 1, supra.] [Emphasis ours.]

**9.** We do not reach the merits of appellee's claim since such was not considered by the Customs Court. We note that the mere fact that appellee exported the goods does not, in and of itself, entitle it to a refund of the estimated duties deposited upon entry of the goods into this country. See 19 U.S.C. § 1558.

**10.** The government argues that since appellee exported the goods on the very day the formal notices of "refusal of admission" were issued, it already knew that the goods were not being allowed to remain in this country. The pertinence of this argument is not apparent in that it ignores the fact that a notice is required by 21 U.S.C. § 381(a) (footnote 7, supra) and, indeed, does not even argue that this putative knowledge existed before the liquidation was made.

The government additionally argues that since the District Director liquidated the entry after the expiration of the period provided the appellee for producing testimony showing the goods to be admissible, the liquidation occurred after the time the *effective* determination of inadmissability was made. Again, this argument ignores the notice required by 21 U.S.C. § 381(a).

The effect of this premature liquidation is in issue.

■ The Customs Court held that nonconformity with § 12.6 mandates a finding that the liquidation was void *ab initio.* We do not agree.

The statute [11] contemplates that both the *legality* and correctness of a liquidation be determined, at least initially, via the protest procedure. The wording of this statute makes it clear that *any* challenge to the propriety of a liquidation (not specifically excepted) must be through this statute.

Additionally, the statute requires that the protest be filed within ninety days of the *decision* complained of.[12] In this case, the protest was not filed within ninety days of the *decision* complained of and the jurisdiction of the Customs Court never attached.[13]

The government notes a certain similarity between the reasoning of the Customs Court in the cases at bar and our decisions in *United States v. Cajo Trading, Inc.,* 55 C.C.P.A. 61, 403 F.2d 268, *cert. denied,* 393 U.S. 827, 89 S.Ct. 90, 21 L.Ed.2d 98 (1968) and *United States v. C. O. Mason, Inc.,* 51 C.C.P.A. 107 (1964), *cert. denied,* 379 U.S. 999, 85 S.Ct. 718, 13 L.Ed.2d 701 (1965), and suggests that now is an appropriate time to overrule those cases. The *Cajo* and *Mason* cases did, in fact, have as a basis for deci-

sion a "void liquidation" theory. There, however, the similarity ends. In *Cajo* and *Mason,* the "void liquidations" were based, respectively, on a void Presidential Proclamation and an unconstitutional statute. In the cases on appeal, there is no complaint that the regulation in issue is void for any reason. We further note that the Customs Court did not mention either the *Cajo* or the *Mason* cases. *Cajo* and *Mason* were the result of extraordinary factual and legal situations requiring unique remedies.

We do not find it necessary to overrule *Cajo* and *Mason* since the Congress has already effectively done so. As noted above, 19 U.S.C. § 1514(a) (1970) makes it quite clear that timely protests must be filed in order to challenge "decisions of the appropriate customs officer, including the *legality* of all orders and findings entering into the same." (Emphasis ours.) The demise of the "void liquidation" rule is further highlighted by the omission from the Tariff Act, as amended in 1970, of the very statutory language—"as provided by law" —relied upon by the court in *Mason.* The appropriate customs official is now required simply to "liquidate the entry of such merchandise" (19 U.S.C. § 1500(d) (1970)) rather than "liquidate * * * as provided by law" (19 U.S.C. § 1505 (1930)). Removal of

11. 19 U.S.C. § 1514(a) provides, in pertinent part:

 (a) Except as provided in * * * section 1520 of this title (relating to refunds and errors), * * * decisions of the appropriate customs officer, including the legality of all orders and findings entering into the same, as to—

 * * * * * *

 (5) the liquidation or reliquidation of an entry, or any modification thereof;

 * * * * * *

 (7) the refusal· to reliquidate an entry under section 1520(c) of this title,

 shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section, or unless a civil action contesting the denial of a protest, in whole or in part, is commenced in the United States Customs Court * * *.

12. 19 U.S.C. § 1514(b)(2) provides:

 (2) A protest of a decision, order, or finding described in subsection (a) of this section

shall be filed with such customs officer within ninety days after but not before—

 (A) notice of liquidation or reliquidation, or

 (B) in circumstances where subparagraph (A) is inapplicable, the date of the decision as to which protest is made.

13. 28 U.S.C. § 1582(c) provides:

 (c) The Customs Court shall not have jurisdiction of an action unless (1) either a protest has been filed, as prescribed by section 514 of the Tariff Act of 1930, [19 U.S.C. 1514] as amended, and denied in accordance with the provisions of section 515 of the Tariff Act of 1930, as amended, or if the action relates to a decision under section 516 of the Tariff Act of 1930, as amended, all remedies prescribed therein have been exhausted, and (2) except in the case of an action relating to a decision under section 516 of the Tariff Act of 1930, as amended, all liquidated duties, charges or exactions have been paid at the time the action is filed.

this stipulation further enhances what we perceive to be a pervasive requirement throughout the statute to channel all non-excepted protests through § 1514 even when those protests go to the legality of a custom official's action.

Since the protest to the liquidation was not timely filed, the complaint was properly dismissed although the correct basis is lack of jurisdiction. The Customs Court apparently found no merit in the protest (tardily filed under § 1558(a)(2)) and then additionally reviewed the complaint under one of the exceptions to the protest procedure (19 U.S.C. § 1520(c)(1) supra) having to do with failure of the customs official to *re* liquidate an entry to correct a clerical error or the like. The Customs Court noted that the record was barren of any evidence tending to support a finding that a clerical error existed. We see no reason to disturb this finding. The judgment is *affirmed.*

James J. Hill, Emrich, Root, O'Keeffe & Lee, Chicago, Ill., for appellant.

Joseph F. Nakamura, Sol., Thomas E. Lynch, Associate Sol., U. S. Patent and Trademark Office, Washington, D. C., for Patent Office.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE * and MILLER, Associate Judges.