**OMNI U.S.A., INC., Plaintiff-Appellant,**

v.

**The UNITED STATES,**
**Defendant–Appellee.**

No. 87–1602.

United States Court of Appeals,
Federal Circuit.

March 2, 1988.

Andrew P. Vance, Barnes, Richardson & Colburn, New York City, argued, for plaintiff-appellant. With him on the brief, was Robert H. Schor, New York City.

Sheila N. Ziff, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for defendant-appellee. With her on the brief, were Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director and Velta A. Melnbrences, Asst. Director. Also on the brief, was Alfonso Robles, Atty. Advisor, U.S. Customs Service, Washington, D.C. of counsel.

Before BISSELL and ARCHER, Circuit Judges, and NICHOLS, Senior Circuit Judge.

NICHOLS, Senior Circuit Judge.

Omni U.S.A., Inc. (Omni) appeals a judgment of the Court of International Trade dismissing Omni's complaint upon defendant's motion for summary judgment. The court held it had no jurisdiction because Omni's reliquidation request under 19 U.S.C. § 1520(c) had been untimely. 11 CIT ——, 663 F.Supp. 1130 (1987). We agree and affirm.

*Facts*

Omni, in 1980, made various entries of Japanese fasteners through the port of Seattle. There was at that time a Treasury order, TD 79–158, 44 Fed.Reg. 31972 (June 4, 1979), requiring deposit of estimated countervailing duties (CVD) upon entry of such articles, and deposit was accordingly required. The order gave notice the estimates were subject to review. By Exec.Order No. 12,188, effective January 2, 1980, 3 C.F.R. at 131 (1981), the President had transferred administration of such countervailing duties to the Department of Commerce, which published a notice of its intent to review all CVD orders then in effect, but by inadvertence and mistake the notice failed to list, with other orders, TD 79–158. Customs therefore failed to hold the liquidation of the entries involved in this litigation in suspense, as it should have

done, and liquidated at the entered rates including the deposits for estimated CVD. These were at the rates of 4.2 or 4 percent. By a further mistake, Omni failed to realize that this had occurred. It is not disputed that proper constructive notice was given by posting in the customhouse, and counsel says Omni simply failed to observe the unfavorable significance of liquidations "as entered," in that context. Later on Commerce, on its review, determined that no CVD was owing on 1980 entries of these fasteners and Omni expected to commence receiving refunds as other importers were doing. Only too late did it realize, counsel says, that it was precluded from receiving refunds by the finality of the erroneous liquidations. On October 13, 1982, it requested reliquidations under authority of 19 U.S.C. § 1520(c)(1), but this request was over a year after all the liquidations and therefore came too late to activate the statute according to its terms. Therefore, the original liquidations were considered final and binding on all persons under section 1514. Omni, however, protested the section 1520 refusal to reliquidate within the required time after the refusal.

## The Statute

Title 19 U.S.C. § 1520 reads in part as follows:

### Cases in which refunds authorized

(a) The Secretary of the Treasury is authorized to refund duties or other receipts in the following cases:

(1) Excess deposits.—Whenever it is ascertained on liquidation or reliquidation of an entry that more money has been deposited or paid as duties than was required by law to be so deposited or paid;

\*      \*      \*      \*      \*      \*

### Authorization of appropriations

(b) The necessary moneys to make such refunds are authorized to be appropriated annually from the general fund of the Treasury.

### Reliquidation of entry

(c) Notwithstanding a valid protest was not filed, the appropriate customs officer may, in accordance with regulations prescribed by the Secretary, reliquidate an entry to correct—

(1) a clerical error, mistake of fact, or other inadvertence not amounting to an error in the construction of a law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the appropriate customs officer within one year after the date of liquidation or exaction; or

\*      \*      \*      \*      \*      \*

## Discussion

### I

Section 1520(c)(1) appears to fit the present case like a glove. It is a statutory instrumentality that is, according to its terms, exactly and precisely suited to deal with an instance, such as here described: customs officers have liquidated entries "as entered" when they should not have done so, because somebody inadvertently failed to inform them by suitable listing that entries of Japanese fasteners were to be suspended from liquidation pending review by the new masters of the CVD cases, at the Department of Commerce. It is an "other inadvertence not amounting to an error in the construction of a law, adverse to the importer \* \* \*." This is too obvious to dispute. If Omni had alerted customs to the error it had committed within a year, its right remained to protest any refusal to reliquidate under section 1514, and to carry the case to the court. On the other hand, the chance for customs to correct its own errors was also preserved, and following the statute would save customs from having to be a defendant because of an error it was ready to acknowledge. If customs elected to correct an acknowledged error, section 1520(a) gave the requisite authority to pay the refunds out of the annual Treasury appropriation. Without this added au-

thority, acknowledgement of the mistake would have been an academic exercise. Further, the one-year limitation assured that whatever errors might lurk in the record would cease to have practical significance after a short time had elapsed—short in the eyes of history—but long enough for an informed and reasoned business decision. It is noteworthy that section 1520(c)(1) is for the protection of importers and there is no correlative provision for increase of duties in case the error was adverse to the government.

This court has several times held that statutory procedures for administrative correction of errors and for judicial review of refusals to acknowledge or correct error, are binding on all concerned, including the time limitations within which valid actions may be taken. The most recent instance is *National Corn Growers Association v. Baker,* No. 87–1147 (slip op. Feb. 9, 1988). In that opinion, others are cited and quoted. Our adherence to this salutary rule has been undeviating.

Since nobody brought the errors to the attention of the appropriate customs officers within a year of the date of liquidation, authority to correct them lapsed according to the term of section 1520(c)(1), the refusal by customs to correct them upon untimely notice was correct, and was the only course open to them. It is the duty of Congress to provide for payment of the just debts of the United States (Const. art. I, sec. 8), but Congress also has authority, not disputed here, to quiet money claims against the United States, not asserted according to reasonable procedures Congress has prescribed. The only question Omni raises is whether Congress has effectively done so.

## II

*National Corngrowers* leaves open any possible instance of a void liquidation. The challenge Omni posed before the Court of International Trade, and here, was that because the purported liquidations were *ultra vires,* they were also null and void. Therefore, the court must pretend they did not occur. Since there were no liqui-

dations, there was nothing for section 1520 to apply to and neither it nor its time limitations apply at all. Asked how then he would be able to get refunds out of the Treasury, since section 1520(a) would not apply, counsel responded that he relied on equitable relief under 28 U.S.C. § 1581(i).

The complaint in the Court of International Trade pursues relief under three counts. Count I is for a taking without due process of law in violation of the fifth amendment, and alleges unequal assessment of duties violating article I, section 8 of the Constitution. Count II alleges the section 1520(c) petition was timely and retention of the money results in unjust enrichment. Count III alleges the protest was timely since the entries had been liquidated without authority of law. While Omni asserts before us that notice of the liquidations was inadequate, there is no count based on that issue and the Court of International Trade does not mention it. From statements in oral argument, we believe the contention really is not that notice was not given, but notice that certain entries were "liquidated as entered" did not alert Omni, or its customhouse broker, that a mistake had been made adverse to it. We think the adequacy of notice is not a separate issue for us to decide, but an added circumstance for the assertion of unjust enrichment.

The essence of the argument, to which all else is adornment, is that the Court of International Trade wrongly cited *United States v. A.N. Deringer, Inc.,* 593 F.2d 1015 (CCPA 1979), as authority rejecting the void liquidation theory as no longer valid in this court.

In *Deringer* our predecessor, the Court of Customs and Patent Appeals, was asked to overrule two of its previous holdings, *United States v. Cajo Trading, Inc.,* 55 CCPA (Customs) 61, 403 F.2d 268, *cert. denied,* 393 U.S. 827, 89 S.Ct. 90, 21 L.Ed. 2d 98 (1968), and *United States v. C.O. Mason, Inc.,* 51 CCPA (Customs) 107 (1964), *cert. denied,* 379 U.S. 999, 85 S.Ct. 718, 13 L.Ed.2d 701 (1965). Those two cases applied the "void liquidation" theory to arrange for the survival of certain issues

which should have been laid to rest by failure to follow statutory protest and review procedures. The court in *Deringer* declined to overrule them saying that Congress had already done so. In support of that statement it referred to 19 U.S.C. § 1500(d), *as amended* in 1970, which eliminated prior language as to what customs officers should do "as provided by law" which language had been relied on by the court in *Mason* as the basis for the void liquidations doctrine. 51 CCPA (Customs) at 113. *Deringer* now stated at 593 F.2d 1020–21:

> Removal of this stipulation further enhances what we perceive to be a pervasive requirement throughout the statute to channel all nonexcepted protests through § 1514 even when those protests go to the legality of a custom official's [sic] action.

> Since the protest to the liquidation was not timely filed, the complaint was properly dismissed although the correct basis is lack of jurisdiction.

We detect in this language a certain want of enthusiasm for the void liquidation notion as stated in the *Cajo* and *Mason* cases. Perhaps some relief was felt that the need to consider overruling them did not arise. Since section 1500(d) as revised in 1970 is still in the statute, clearly we are not obliged to follow *Cajo* and *Mason*. As applied to the present law, they either were never authority, or if they were, are discredited. Our present appellant argues that the court in *Deringer* misapprehended the purpose of the change, which was to restate the duties of the former collectors and appraisers of customs, offices which before 1970 had been merged into a single person the statute since 1970 has called "the appropriate customs officer." Suppose this is true, it does not restore *Cajo* and *Mason* to any position requiring obeisance by us.

Our want of enthusiasm for the void liquidations doctrine matches that of the *Deringer* court. It appears to be an abstraction having no function except to thwart the efforts of Congress to identify issues of fact and law for prompt administrative or judicial disposition, and to put permanently to rest issues not thus promptly identified for disposition. Specifically with respect to section 1520(c)(1), the doctrine is invoked to make section 1520(c)(1) inapplicable to a case where it applies by its own plain language and is needed as much as anywhere. No one could impute to Congress any rational reason for excluding section 1520(c)(1) from applying because it was a particularly egregious mistake, the overlooking of an executive order transferring a function to another government agency. Moreover, section 1520(c)(1) does not apply to mistaken liquidation only. It applies to "other customs transactions." If a liquidation is not a liquidation because it is void, why is it not an "other customs transaction?"

Appellant's view, if it prevailed, apparently would, wherever applicable, deny customs officials the authority they now have to correct mistakes and refund overpayments. The sole authority to do this would reside in the court's supposed equitable powers which, however, are not as sweeping as appellant supposes in view of the analysis in *National Corngrowers* and other cases. Suppose they are broad enough, it is hardly a result we would care for to compel litigation when there is no real dispute, simply because customs officers cannot correct what they recognize as errors without colliding with this mysterious doctrine.

Accordingly, we agree with the Court of International Trade that occasion to apply equitable doctrines under the supposed authority of 28 U.S.C. § 1581(i) does not arise because the legal remedy is adequate. It is not made inadequate simply because appellant failed to invoke it within the time frame it prescribes. *Miller & Co. v. United States*, 824 F.2d 961, 964, —— Fed.Cir. (T) —— (1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 773, 98 L.Ed.2d 859 (1988). *See also American Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1551, 2 Fed.Cir. (T) 1, 6–7, *cert. denied*, 466 U.S. 937, 104 S.Ct. 1909, 80 L.Ed.2d 458 (1984); *United States v. Uniroyal, Inc.*, 687 F.2d 467, 471 (CCPA 1982).

*Conclusion*

The Court of International Trade rightly dismissed the complaint in this case because it was founded on a refusal to reliquidate an erroneous liquidation under 19 U.S.C. § 1520(c)(1), which refusal was justified because the error had not been brought to the attention of customs officials within the time prescribed in the statute, and therefore jurisdiction to effect correction under that statute had lapsed.

AFFIRMED.