UNITED STATES of America, Plaintiff,

v.

CHERRY HILL TEXTILES, INC. and International Cargo and Surety Insurance Company, Defendants.

INTERNATIONAL CARGO AND SURETY INSURANCE COMPANY, Cross-Plaintiff,

v.

CHERRY HILL TEXTILES, INC., Cross-Defendant.

Slip Op. 95–99.
Court No. 94–09–00534.

United States Court of International Trade.

May 30, 1995.

Frank W. Hunger, Asst. Atty. Gen., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation

Branch, Civ. Div., Dept. of Justice (Barbara Silver Williams); Ted Kundrat, U.S. Customs Service, Washington, DC, for plaintiff.

Hodes & Pilon, Chicago, IL (Wayne Jarvis and Michael G. Hodes), for defendant Intern. Cargo and Sur. Ins. Co.

## Opinion and Order

NEWMAN, Senior Judge:

### Introduction

The government brings this collection action for recovery of unpaid customs duties in the sum of $12,220.62, plus interest, against Cherry Hill Textiles, Inc. ("Cherry Hill"), importer of record of certain dyeing machines entered duty free through the port of Newark on September 18, 1987, and International Cargo and Surety Insurance Company ("Intercargo"), the surety on the importer's entry bond. Intercargo has filed a cross-claim against its co-defendant, Cherry Hill, to recover indemnification for any sums awarded to plaintiff. Jurisdiction in this type of action is predicated on 28 U.S.C. §§ 1582(2) and 1582(3).

Currently before the court is the government's motion for summary judgment under CIT Rule 56 against the surety. Intercargo opposes the motion raising certain affirmative defenses set forth in the answer, addressed *infra*, and on the ground there are genuine issues of material fact for trial. Further, Intercargo moves for oral argument on the government's motion, demands a jury trial in accordance with CIT Rule 38, and moves for an evidentiary hearing on its motion to strike a declaration proffered by defendant in support of its motion for summary judgment.

For the reasons that follow, plaintiff's motion for summary judgment is granted; defendant's motions for oral argument and evidentiary hearing are denied.

There can be no genuine issue as to the following material facts: Cherry Hill entered the dyeing machines at Newark, New Jersey as duty free on September 18, 1987 under Entry No. F23 0005237–0. Approximately thirteen months thereafter, on October 28, 1988, Customs liquidated the entry as dutiable in the sum of $12,220.62. The govern-ment demanded payment of duties from Intercargo under its bond, which payment was refused. However, Intercargo protested neither the liquidation nor demand for payment, as it had a right to do in conformance with 19 U.S.C. § 1514(a).

### Parties' Contentions

Intercargo denies liability for duties under its entry bond asserting that such liability would have been discharged one year from the date of entry—September 18, 1988—on which date the entry was "deemed liquidated" in accordance with 19 U.S.C. § 1504(a) "at the rate of duty, value, quantity, and amount of duties asserted at the time of entry." As noted *supra*, the merchandise was entered by Cherry Hill as duty-free.

Revolving around its "deemed liquidation" contention, Intercargo interposes three interrelated affirmative defenses:

First, under § 1514(a) the deemed liquidation is "final and conclusive" upon the government, and therefore, precludes the government's claim for duty liability predicated on the subsequent liquidation of October 28, 1988.

Second, an entry cannot lawfully be "liquidated" following a deemed liquidation, and hence, the government's so-called "liquidation" of October 28, 1988 is null and void.

Third, on October 28, 1988 the government in fact unlawfully reliquidated the "deemed liquidation," and similarly such reliquidation is null and void.

Finally, relative to summary judgment, Intercargo insists that in any event there are numerous genuine material issues of fact for trial, and consequently, the government's motion must be denied and this action proceed to a trial by jury, as demanded.

■ Citing *United States v. Utex International, Inc.,* 857 F.2d 1408 (Fed.Cir.1988); *Omni U.S.A. v. United States,* 840 F.2d 912, 913 (Fed.Cir.1988), *cert. denied,* 488 U.S. 817, 109 S.Ct. 56, 102 L.Ed.2d 34 (1988); *United States v. A.N. Deringer,* 66 CCPA 50, 55, 593 F.2d 1015 (1979), *SCA Int'l, Inc. v. United States,* 14 CIT 59, 1990 WL 13547 (1990), *Computime, Inc. v. United States,* 9 CIT 553,

557, 622 F.Supp. 1083 (1985), *Juice Farms, Inc. v. United States*, —— CIT ——, Slip Op. 94–172, 1994 WL 631649 (Nov. 9, 1994), *appeal docketed*, CAFC Dec. 8, 1994, and *Mitsubishi Electronics America, Inc. v. United States*, —— CIT ——, ——, 865 F.Supp. 877 (1994), the government maintains, correctly, that even if the October 28, 1988 liquidation is illegal, because the period in which to liquidate the entry was not timely suspended or extended, such liquidation is not void, but merely voidable;[1] that pursuant to § 1514 even a voidable liquidation is "final and conclusive" unless contested by a timely protest; that Intercargo's failure to file at the administrative level a protest against either the liquidation or the demand for payment under its bond leaves the liquidation of October 28, 1988 final and conclusive against the surety precluding judicial review of Intercargo's affirmative defenses; and that Intercargo's failure to file a protest constitutes a waiver of all claims or defenses that could have been raised by protest and administratively reviewed by Customs concerning the liquidation prior to the commencement of this collection action against the surety.

Finally, the government vigorously disputes plaintiff's contention there are genuine issues of material fact for trial, and urges that since Intercargo's affirmative defenses are barred from judicial review, the government is, as a matter of law, entitled to a judgment for unpaid duties plus interest on Intercargo's bond and summary judgment therefore must be entered for the government.

In response to the government's position that Intercargo's affirmative defenses to liability are now precluded by its failure to file a timely protest, Intercargo counters: the "final and conclusive" provision in § 1514 is inoperative in a collection action by the government under § 1582; and to apply that provision to a surety in the manner sought by the government would deprive Intercargo of its right to a trial *de novo*, and its Consti-

tutional guarantees of equal protection and a jury trial under the Fifth and Seventh Amendments respectively.

### *Discussion*

### I.

This action raises the significant legal issue of whether a defendant surety in an action brought by the government under § 1582 may, as an affirmative defense to duty liability under its bond, collaterally challenge the legality of a liquidation, which by the terms of § 1514 is "final and conclusive" as to all persons if not timely protested, where the surety failed to file such protest.

It is beyond contravention that under the express terms of § 1514, a liquidation or reliquidation is "final and conclusive" against all persons, including a surety on an entry bond, unless timely protested.[2] *See Utex International, Inc., supra; A.N. Deringer, supra; American Motorists Ins. Co. v. United States*, 14 CIT 298, 737 F.Supp. 648, 649 (1990); *Mitsubishi Electronics America, Inc., supra; Juice Farms, Inc., supra; United States v. Ataka America, Inc.*, 17 CIT ——, 826 F.Supp. 495 (1993); *SCA Int'l, Inc., supra; Washington Int'l Ins. Co. v. United States*, 13 CIT 112, 707 F.Supp. 561 (1989); *Computime, Inc. v. United States*, 8 CIT 259, 601 F.Supp. 1029 (1984), *aff'd*, 772 F.2d 874 (Fed.1985); and *Schmitt & Co. v. United States*, 71 Cust.Ct. 194, 371 F.Supp. 1079 (1973).

The "final and conclusive" provision in § 1514 is not applicable only in civil actions brought by an importer against the government, as mistakenly argued by Intercargo. It is a well-settled maxim that "[i]n a statutory construction case, the beginning point must be the language of the statute, and when a statute speaks with clarity to an issue judicial inquiry into the statute's meaning, in all but the most extraordinary circumstances, is finished." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475, 112

---

1. As to whether the liquidation of October 28, 1988—more than one year after the date of entry—may have been improper, *see Pagoda Trading Corp. v. United States*, 804 F.2d 665 (Fed.Cir. 1986), *Detroit Zoological Soc'y v. United States*, 10 CIT 133, 630 F.Supp. 1350 (1986).

2. Hereinafter, the term "liquidation" shall be used to include a "reliquidation" since under § 1514 both are "final and conclusive" unless a timely protest is filed.

S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992). Thus, by the plain language of the statute, the term "final and conclusive" does not have the restricted application claimed by Intercargo. Hence, the finality and conclusiveness of an unprotested liquidation may be invoked by the government *defensively* in an action brought by the importer or surety under § 1581(a), or as here, by the government *offensively* in a collection action under § 1582(2) to preclude the court from adjudicating the legality of an unprotested (and therefore administratively unreviewed) liquidation or other Customs decision.

Under Intercargo's theory, a surety who has filed no protest, or an untimely protest, against a liquidation, which liquidation by the terms of § 1514(a) has becomes final and conclusive, may simply wait for the government to bring a collection under § 1582(2) and then collaterally challenge the liquidation in the collection action. Clearly, the concept of an unprotested liquidation which by the express terms of the statute has become final and conclusive on both the importer and the government, but still remains fully subject to challenge and judicial review if the government brings a collection action under § 1582(2) would indeed be anomalous and make a mockery of congressional intent in § 1514.

## II.

■ The court next addresses the legislative intent in granting the CIT jurisdiction over collection actions by the government under § 1582 as such intent bears on the present issue. Specifically, the government directs the court's attention to the expressed Congressional intent to preclude importers or their sureties who are defendants in collection suits from bypassing administrative review of protestable decisions by challenging such decisions in response to § 1582 actions brought against them by the government.

Under the Customs Courts Act of 1980, P.L.96–417, Congress transferred exclusive jurisdiction over customs-related collections instituted by the United States from the United States District Courts to the newly formed United States Court of International Trade. 28 U.S.C. § 1582. The purpose of the transfer of jurisdiction and scope of judicial review of Customs's decisions is addressed in the House Report prepared by the Committee on the Judiciary, H.R. 1235, 96th Cong. 2d Sess. 49 (August 20, 1980) U.S.Code Cong. & Admin.News 1980, pp. 3729, 3760:

Jurisdiction over this type of civil action presently lies in the federal district courts. However, since each of these actions present questions which involve the expertise of the court, e.g. questions concerning classification, valuation or markings, the Committee believes exclusive jurisdiction over these actions should lie in the United States Court of International Trade.

Paragraphs (2) and (3) of proposed section 1582 provide jurisdiction for the Court of International Trade to hear collections cases, i.e., recoveries on a bond or recoveries of customs duties. The Committee intends that these actions proceed in the same manner as they have in the district courts.

*The Committee does not intend for importers to withhold payment of their assessed duties and then await suit by the Government in order to challenge the underlying administrative decision by the Customs official as to classification or valuation through the use of a counterclaim pursuant to proposed section 1583.* Under H.R. 7540, the filing and denial of a protest will continue to be prerequisites to the commencement of a civil action traditionally brought by an importer, as will payment of all liquidated duties, charges and exactions, except as provided in this legislation. *The bill is not intended to make a major change in the requirement that an importer exhaust all administrative remedies prior to commencement of a civil action in the Court of International Trade,* except as provided for by proposed section 2637(b).

H.R. Rep No. 1235, 96th Cong. 2d Sess. 49 (Aug. 20, 1980) (emphasis added).

Buttressing the government's position that Intercargo's affirmative defenses contesting the liquidation are now precluded in this suit because Intercargo failed to file a protest against such liquidation is that Congress

made clear its intent that judicial review of protestable decisions in § 1582 actions still requires exhaustion of administrative remedies as a prerequisite and that challenge to such decisions cannot be made by counterclaim. Since Congress intended that a counterclaim challenging a protestable decision under § 1514(a) not be available to the importer in a § 1582 action in order to evade administrative review, a fortiori, affirmative defenses such as those asserted by Intercargo challenging the liquidation may not be used to the same effect. Plainly, a surety having a potential liability under its bond for unpaid duties would have little incentive to formally initiate by protest administrative proceedings challenging a liquidation and pay the duties up front if the surety could simply await a § 1582 action and then contest the liquidation as an affirmative defense. Clearly, Congress did not intend that the § 1582 collection suit should serve as an alternative vehicle for importers or their sureties to litigate the full panoply of Customs' decisions involved in classification, appraised value, or as here the liquidation, which decisions Congress expressly made final and conclusive unless timely protested.

As exemplified by the very precedents relied on by Intercargo and discussed *infra*, only in cases involving an administrative decision or demand outside the parameters of a liquidation or other protestable administrative decision enumerated under § 1514 can a surety, without having filed an administrative protest, contest and obtain judicial review of the administrative decision or demand. Hence, not only are the factual and legal settings in the precedents cited by Intercargo quite distinguishable from those in the current action, the underlying rationale of the decisions actually buttresses the government's, not Intercargo's, position.

Thus, in *United States v. Utex Int'l Inc.*, 857 F.2d 1408 (Fed.Cir.1988)), a collection action by the government against a surety to recover liquidated *damages*—not liquidated *duties*—the government, relying on § 1514, unsuccessfully argued that the surety was precluded from contesting Customs' demand for payment of liquidated damages because the surety had failed to file a protest against the demand for payment. The Federal Circuit observed that while § 1514 requires exhaustion of administrative remedies—filing and denial of a protest—as a prerequisite to judicial review of a liquidation or any decision subsumed in liquidation, the surety was not required to file a protest as a prerequisite to its right to defend against the government's claim for liquidated damages.

Although the *Utex* court held that the finality of a liquidation absent a timely protest did not apply to judicial review of a demand for liquidated damages, *Utex* is quite clear that unprotested liquidated duties and all decisions subsumed in the liquidation are final and conclusive and not subject to judicial review. Therefore, *Utex* fully supports the government's argument that Intercargo is now barred from challenging the October 28, 1988 liquidation.

*United States v. Sherman & Sons Co.*, 237 U.S. 146, 35 S.Ct. 520, 59 L.Ed. 883 (1915), also heavily relied on by defendant, was an *in personam* collection suit by the government against the importer for recovery of duties. The Collector of Customs reliquidated the entry with increased duties more than four years after the original assessment charging the importer with fraud when making the entry. The importer filed no protest against the reliquidation and the issue before the Supreme Court was whether such reliquidation for fraud was contestable by the importer in the government's collection suit, or was final and conclusive against the importer since no protest had been filed against the reliquidation.

The Court, citing the particular language of the 1874 Tariff Act, held that absent a protest, the reliquidation was indeed final and conclusive on the importer, but only as to the amount of duties. The 1874 statute, according to the Court, permitted the collector's finding of fraud, the ground upon which the entry was reliquidated, to be judicially contested and reviewed notwithstanding no protest was filed.

The rationale of *Sherman* was based on the specific statutory language of the Tariff Act of 1874 making the reliquidation final and conclusive only with regard to the rate and amount of duties, but not with regard to

the finding of fraud, which finding was *outside the parameters of those administrative decisions of the collector made final and conclusive by the statute if no protest was filed.*

Extrapolating the rationale of *Sherman*—that in a suit on an unprotested reliquidation for fraud, the rate or amount of duties was uncontestable by the importer *because such rate and amount fell within the final and conclusive language of the 1874 statute*—to the issue in the current case, the government's position appears correct. Under § 1514, liquidation, including the rate and amount of duties, is encompassed by the final and conclusive provision of the statute.

In *St. Paul Fire & Marine Ins. Co. v. United States,* 959 F.2d 960 (Fed.Cir.1992) the surety, St. Paul, paid the importer's duties on demand by the government under the entry bond and then filed an action contesting the denial of the importer's protests against classification of the merchandise by Customs and seeking a refund of the duties paid on behalf of the importer. After commencing its action challenging the classification of the merchandise and after the expiration of time for protesting Customs' demand for payment under the bond, St. Paul discovered information relevant to discharge of its liability under its bond. St. Paul thereupon moved to amend its complaint to assert counts alleging contractual breaches of duty by the government to the surety under the bond. The CIT, however, denied St. Paul's motion to amend the complaint reasoning that since St. Paul had failed to protest the government's demand for payment under the bond, the court lacked jurisdiction over the new counts alleging contractual breaches of duty sought to be asserted by amendment of St. Paul's complaint.

The Federal Circuit reversed, holding that St. Paul's proposed breach of contract counts against the government were not barred by the surety's failure to file a timely protest. The Federal Circuit observed that the basis for St. Paul's contractual claims was not discovered, hence did not accrue, within the statutory time-frame for protesting Customs' demand for payment, and therefore, such contractual defenses could have been assert-ed by St. Paul had it had been sued on its bond by the government. Significantly, too, the Federal Circuit reasoned that St. Paul's contractual claims, even had they accrued prior to liquidation, would not have been subsumed by the liquidation, were personal to the surety, and therefore, the CIT had residual jurisdiction of the contractual claims under 28 U.S.C. § 1581(i).

Here, by contrast, Intercargo's affirmative defenses contest the liquidation which could have been timely protested, and raise no contractual claim against the government personal to the surety or relevant to a breach of the government's obligations under the bond. Clearly, then, the rationale of *St. Paul* gives no solace to Intercargo, but rather supports the government's contention.

### III.

■ Intercargo further argues that if its affirmative defenses challenging the liquidation are now held to be irreparably prejudiced because no protest was filed and denied pursuant to §§ 1514 and 1515, Intercargo would be deprived of its right as a defendant in a § 1582 action to a judicial determination of all its defenses in a trial *de novo, i.e.,* on the record made before the court, pursuant to 28 U.S.C. § 2640(a)(6). That contention is without merit. The right to *de novo* judicial review subsumes exhaustion of the administrative remedies, and simply assures a judicial determination based on the record made before the court rather than the administrative record.

It is too obvious to warrant extended discussion that a civil action initiated by an importer or surety under 28 U.S.C. § 1581(a) to contest a liquidation, which is also tried *de novo* pursuant to § 2640(a), requires exhaustion of the administrative remedies in conformity with §§ 1514 and 1515. Similarly, Intercargo's right to *de novo* review of the legality of the liquidation requires the exhaustion of the administrative remedy under §§ 1514 and 1515 as a prerequisite to such review.

### IV.

■ Intercargo also argues that if its affirmative defenses challenging the legality of

the liquidation are now precluded because the unprotested liquidation is now final and conclusive, Intercargo would be unconstitutionally deprived of its right to a jury trial of its defenses in violation of the Seventh Amendment. The court disagrees. In *Auffmordt v. Hedden*, 137 U.S. 310, 11 S.Ct. 103, 34 L.Ed. 674 (1890), the importer sued the Collector to recover allegedly excessive duties paid under protest. Significantly, the Supreme Court flatly rejected the importer's claim that the finality and conclusiveness of the appraised values of the merchandise (upon which the assessment of duties was predicated), in accordance with the statute then in effect, deprived the importer of its constitutional right to a jury trial on the valuation issue. The Court held that the government "has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues," quoting *Cheatham v. United States*, 92 U.S. 85, 89, 23 L.Ed. 561 (1876). *A fortiori*, the finality and conclusiveness of the liquidation now sought to be challenged by Intercargo, absent the filing of a timely protest, does not unconstitutionally deprive Intercargo of its right to a jury trial, as the government "has the right to prescribe the conditions on which it will subject itself to the judgment of the courts." *Id.*

■ The government does not dispute Intercargo's contention that in a suit against the surety under § 1582, the surety has a constitutional right to a jury trial on issues of fact. However, a surety's constitutional guarantee of a jury trial in such collection suit does not carry with it an unconditional right to raise the legality of the liquidation as a defense to duty liability. Any right to contest the liquidation and assessment of duties is, of course, purely a creature of statute, and may be statutorily circumscribed by, *inter alia*, exhaustion of the protest procedure prescribed by § 1514 without violation of the Seventh Amendment. A statutory prerequisite of exhaustion of an administrative remedy does not violate the Seventh Amendment's guarantee of a trial by jury. *See Linder v. Smith*, 193 Mont. 20, 629 P.2d 1187 (1981) (mandatory submission of medical malpractice claims to screening panel as prerequisite to right to a jury trial does not

violate Seventh Amendment since right to jury trial is preserved regardless of decision of screening panel); *Kimbrough v. Holiday Inn*, 478 F.Supp. 566 (E.D.Pa.1979) (compulsory nonbinding arbitration as prerequisite to judicial proceedings does not violate right to trial by jury as guaranteed by Seventh Amendment); and *Davison v. Sinai Hospital of Baltimore, Inc.*, 462 F.Supp. 778 (D.C.Md. 1978), *aff'd* 617 F.2d 361 (4th Cir.1980) (mandatory arbitration of medical malpractice claims as prerequisite to right to trial by jury is not unconstitutional notwithstanding that statute made findings of arbitrators presumptively correct).

### V.

■ Intercargo's further constitutional argument that the final and conclusive language of § 1514, as it is sought to be applied by the government in this case, deprives a surety of the equal protection of the laws in violation of the Fifth Amendment is also without merit. The final and conclusive provision in § 1514 expressly applies to all persons, including the government, and Intercargo was not precluded from filing a timely protest challenging the liquidation or demand for payment under its bond, thus avoiding the finality of the liquidation, and thus protecting its right to judicial review of the legality of the liquidation.

### VI.

Finally, the court addresses Intercargo's contention that summary judgment should be denied as there are numerous issues of material fact. As noted above, the court has concluded that Intercargo's affirmative defenses challenging the October 28, 1988 liquidation are, as matter of law, barred from judicial review in this action. The preclusion of Intercargo's affirmative defenses challenging the legality of the liquidation and assessment of duties leaves no genuine issue of material fact for trial relating to Intercargo's liability under its bond for Cherry Hill's unpaid duties. Accordingly, the court need not reach Intercargo's motions to strike and for an evidentiary hearing regarding the Declaration of Ronald Busch, an accountant at the

Customs National Finance Center, Indianapolis, Indiana concerning Customs' liquidation, duty assessment and collection procedures and the document authentication and evidentiary foundation issues raised by Intercargo.

### Conclusion

In conformance with conclusions reached, the government's motion for a summary judgment is granted in the amount of $12,-220.62 plus accrued pre- and post-statutory interest. Of course, before final judgment may be entered in this action, Intercargo's cross-claim against Cherry Hill for contractual indemnification under the bond remains for disposition.

Finally, the court finds that the parties' exhaustive briefing and analysis of the relevant legal issues and precedents adequately present their positions and in the interest of judicial economy Intercargo's request for oral argument is denied.