JOHN S. PHIPPS *v.* UNITED STATES (No. 3838)[1]
UNITED STATES *v.* JOHN S. PHIPPS (No. 3841)

---

[1] T. D. 47601.

United States Court of Customs and Patent Appeals, February 25, 1935

*Theodore J. Miller* for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *John F. Kavanagh*, special attorney, of counsel), for the United States.

[Oral argument February 6, 1935, by Mr. Miller and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

LENROOT, Judge, delivered the opinion of the court:

These are cross appeals in a reappraisement proceeding wherein the United States Customs Court, Third Division, reversed a judgment of the single judge sitting in reappraisement, the appellate division holding that appellant's appeal to reappraisement should have been dismissed "as having been filed too late." The importer will hereinafter be referred to as "appellant" as we find it unnecessary to consider the Government's cross appeal.

From the judgment so rendered by said Third Division appellant filed a petition for review by this court, assigning 38 errors. The United States cross-appealed, assigning 7 errors, for the purpose of presenting an alternative claim that, if this court should hold that appellant's appeal was timely, the single judge and the appellate division lacked jurisdiction of appellant's appeal to reappraisement by reason of the fact, claimed by the Government, that appellant had failed to comply with statutory provisions in making his entry, precluding any right to appeal to reappraisement by him.

This proceeding arises out of the importation of a diamond and emerald necklace purchased in England by appellant and imported by him as a part of his personal baggage at the port of New York on June 21, 1930.

The conceded facts shown by the record are that, upon his arrival at the port of New York, appellant presented to the customs examiner a "Baggage Declaration and Entry" which had been previously prepared by him, and in which he had listed all the articles purchased by him in England, stating the value of each, with the exception of the necklace here involved; as to this necklace, he stated to the examiner on the dock that he purchased the necklace as an antique for which he paid £6000 Sterling, and claimed the article to be free of duty as an antique; at the same time he produced a consular invoice showing a purchase price of £6000 for said necklace. His claim of antiquity was not approved by the examiner at the dock, who, after converting the stated purchase price of £6000 into dollars, amounting to $29,100, wrote said last named sum in red ink upon the face of the baggage declaration immediately over the words "One antique necklace," and in red ink the figures £6000 immediately after the word "necklace;" said red ink notations were made after appellant had completed, signed, and presented his baggage declaration; the examiner at the dock then sent the necklace to the public stores for re-examination, and upon such re-examination it was held not to be an antique. Thereafter the Treasury Department, while the necklace was still in customs custody, permitted the plaintiff to manipulate it by removing the precious stones therefrom under color of section 562 of the Tariff Act of 1930. As a result of this action the necklace, which in its imported condition was subject to classification for duty as jewelry, was advisorily returned as precious stones and a mounting, the precious stones being appraised at $21,000, as shown by red ink notations upon a memorandum in evidence attached to the baggage declaration, and the mounting as jewelry valued at $20. The appraiser's red ink notations further show that he described the precious stones as dutiable at 10 per centum, and the mounting at 80 per centum. The record fairly indicates that, had this manipulation and segregation of the precious stones not been permitted, appellant would have returned the necklace to the seller in England rather than pay duty upon the value thereof as jewelry at the rate of 80 per centum ad valorem.

It appears from said memorandum that duty was assessed upon the stones and mountings in the sum of $2,116.00, and on August 28, 1930, this sum was paid by appellant to the collector and the necklace, as manipulated, was released from customs custody to appellant. We find no liquidation stamp upon any of the entry papers other than one dated July 27, 1931, but there does appear on said memorandum two "Paid" stamps, one bearing date August 28, 1930, and the other, by the Comptroller of Customs, bearing date August 29, 1930. Apparently the entry of said necklace was liquidated by the collector on August 28, 1930.

Upon the back of the baggage declaration there are certain red ink notations, the first of which are partly illegible, but they indicate that they were intended to record the original appraisement of $21,000 for precious stones and $20 for the mounting. In these notations the red figures "$21,000" have been crossed out in red ink, and the figures "$29,200" written above the same.

Below the above-mentioned notations there appears in red ink the following:

> Collr
>     Please note above for the consideration of
> this _____ (illegible)
> Appraised value
>         $29200 or
> the equivalent
> of £6000.0.0
> price paid by
> importer

Upon the face of the aforesaid memorandum attached to the baggage declaration there appears in red ink the following, under the heading "Appraiser's Return:"

> 1 mounting—jewelry $20
> used
>     broken
> reconsidered value of
> precious stones $29,180

Below this notation appears the date 9/29/30. It thus appears that on September 29, 1930, the necklace, as manipulated, was again appraised. The following day, September 30, 1930, the Collector of Customs wrote appellant a letter which reads as follows:

> Reference is made to the Baggage Declaration made by you on arrival per steamship *Berengaria*, June 21, 1930, and particularly to a diamond and emerald necklace brought in by you. Manipulation of the article was permitted by the Treasury Department under the provisions of Section 562 of the Tariff Act of 1930.
>
> In assessing duty the officer returned "Jewelry $20.00 at 80 per cent, duty $16.00" and "Precious stones $21,000.00 at 10 per cent, duty $2,100.00." As Section 562 provides for the collection of duty on the entered value of an article, and as the entered value of the article was $30,000.00, there is a balance of dutiable value of $8,180.00 of precious stones at 10 per cent.
>
> There is, therefore, due the Government an additional sum of $818.00, which I will thank you to forward to the Entry Division, Custom House, New York, in the form of a certified check drawn to the order of the Collector of Customs, New York. This office regrets any inconvenience the error may cause you.

Thereafter considerable correspondence took place between appellant's attorneys and customs officers of the Government, only a portion of which was introduced in evidence.

On May 21, 1931, the Assistant Collector of Customs at New York wrote appellant's attorney a letter which reads as follows:

Reference is made to your communication of the 18th instant, which again refers to a diamond and emerald necklace brought in by Mr. John S. Phipps, a passenger on the S/S Berengaria, arrival of June 21, 1930.

It was pointed out to you in a communication from this office dated November 1, 1930, that while the appraiser originally made a separate return of the setting and the diamonds and emeralds contained therein after they had been manipulated and appraised them at a total of $21,020.00 for duty purposes, yet he had no authority for such action under the provisions of Section 562 of the Tariff Act. When this error on his part was discovered by this office the papers were again returned to him for correction. He thereupon returned the merchandise at a dutiable value of $29,200.00, in accordance with the provisions of the section named.

This correction of an error was in no manner a reappraisement so far as the Government was concerned.

The Commissioner of Customs has held that your client had a right to appeal to the United States Customs Court from this appraisement of $29,200.00 within thirty days after the return was made. You failed to do so, and as has been heretofore stated, it is therefore legally impossible for the Government at this time to assess duty on any other value than that returned by the appraiser in accordance with the plain provisions of law.

Since duty was paid by Mr. Phipps upon an erroneous valuation, there is due the Government additional duties in the sum of $818.00, and unless payment of this sum is made at an early date, I shall be compelled to refer the matter to the United States Attorney.

It appears from this letter that the assistant collector was of the opinion that the appraisement of the necklace, as manipulated, in August, 1930, was void because of non-compliance with the provisions of section 562 of the Tariff Act of 1930. If that be true, it does not appear from the record, if the appraisement of August 28, 1930 was invalid, in what respect the *appraisement* of September 29, 1930, cured any defects existing in the former appraisement. We would also observe that this letter informed appellant's attorney of the appraisement of $29,200, and if any notice was required (which, for reasons hereinafter set forth, we need not here determine), it would seem that it sufficiently complied with the statute, and that appellant's time within which to appeal to reappraisement began to run from the date of the mailing of said letter of May 29, 1931. No such appeal was taken.

Of course it was not the province of the collector to determine whether appellant had by his delay lost his right to appeal to reappraisement. That was a matter that could be determined under the statute by the Customs Court or, upon appeal, by this court; and while the letter last above quoted possibly misled appellant as to his right of appeal to reappraisement, that is not a matter that either the Customs Court or this court could consider in passing upon the question of the timeliness of appellant's appeal to reappraisement here in-

volved. However, it is unnecessary for us to pass upon the sufficiency of said letter as a notice of appraisement to appellant, and we make no holding with respect thereto.

On July 13, 1931, the assistant collector at New York again wrote appellant's counsel, apparently in reply to a letter from said counsel, from which it appears that the Government was again contending that the entered value of the necklace was $29,200. Appellant's counsel wrote a letter under date of July 24, 1931 to the Bureau of Customs and insisted that appellant had never entered any value for the necklace, and that there was no warrant for the exaction of any additional duties upon the merchandise.

Under date of August 22, 1931, the Acting Commissioner of Customs replied to this letter as follows:

Receipt is acknowledged of your letter of July 24, 1931, further in regard to the necklace imported through the port of New York by Mr. John S. Phipps.

You state that, in your letter of October 6, 1930, addressed to the Collector of Customs, you made the statement that Mr. Phipps had entered the necklace at the purchase price of $30,000.00, but that you were mistaken in that and that Mr. Phipps did not enter the necklace at any valuation. You state that he simply declared it as an antique and entitled to entry free of duty.

The record before the Bureau shows, however, that Mr. Phipps, in his baggage declaration No. 36250, did in fact declare a value of $29,200 for the necklace. The matter of the entered value is immaterial in this case, however, as a baggage declaration is an informal entry and the entered value would not be binding. The case is controlled entirely by the appraised value, and the Appraiser having adhered to his return of $29,200 as the correct dutiable value of the necklace, the Bureau has no authority to direct the assessment of duty upon a less amount.

Your name does not appear upon the list of attorneys and agents authorized to represent claimants before the Treasury Department. In order that you may take steps for proper enrollment, a copy of Department Circular No. 230, containing instructions and an application form for admission to practice before the Treasury Department, is enclosed herewith.

Thus it appears that in the last communication in the record between the customs officers and appellant and his attorney, the Government relied not upon entered value of the necklace, but upon the appraisement thereof made on September 29, 1930.

As the appellate division in its decision has noted, there appears in the files of the case an order of the Acting Commissioner of Customs, dated February 28, 1933, in which he directs the collector to cancel the liquidation of the entry of the necklace and to send a notice of appraisement of the necklace to appellant. As we have hereinbefore noted, the memorandum attached to the baggage declaration has imposed upon it a stamp containing the words "Liquidated July 27, 1931." Across these words we find written in ink the following: "Liquidation canceled by order of Com. of Customs. See letter attached. S. M. Thurston, D. C. 4/29/33."

In accordance with said order, the collector mailed a notice of appraisement of the necklace in question to appellant and his attorney on May 8, 1933.

The appellate division held that appellant had notice of the so-called "second appraisement" in 1930; that the purported cancellation of the liquidation of July 27, 1931, was null and void, and that the notice of appraisement of May 8, 1933, was likewise null and void for the reason that, no protest having been filed against said liquidation of July 27, 1931, and no action having been taken by the Government with respect thereto within sixty days from its date, said liquidation became final although it may have been based upon an illegal act. The court cited in support of such conclusion our decision in the case of *Gallagher & Ascher* v. *United States,* 21 C. C. P. A. (Customs) 313, T. D. 46832.

We find it necessary to consider only the question of the validity of the purported cancellation of the liquidation of July 27, 1931, and the power of the collector to issue the notice of May 8, 1933.

We confess our astonishment at the action of the Acting Commissioner of Customs in February, 1933, directing the collector at New York to cancel his liquidation of July 27, 1931, and ordering the collector to issue the notice of appraisement here involved, dated May 8, 1933. This order of the Acting Commissioner of Customs was clearly in violation of law.

Section 514 of the Tariff Act of 1930 reads as follows:

SEC. 514. PROTEST AGAINST COLLECTOR'S DECISIONS.

Except as provided in subdivision (b) of section 516 of this Act (relating to protests by American manufacturers, producers, and wholesalers), all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs laws, and his liquidation or reliquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation or reliquidation when such liquidation or reliquidation is made more than ten months after the date of entry, shall, upon the expiration of sixty days after the date of such liquidation, reliquidation, decision, or refusal, be final and conclusive upon all persons (*including the United States and any officer thereof*), unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall within sixty days after, but not before such liquidation, reliquidation, decision, or refusal, as the case may be, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, decision or refusal, the reasons for the objection thereto. The reliquidation of an entry shall not open such entry so that a protest may be filed against the decision of the collector upon any question not involved in such reliquidation. (Italics ours.)

Section 521 of said act reads as follows:

SEC. 521. RELIQUIDATION ON ACCOUNT FRAUD.

If the collector finds probable cause to believe there is fraud in the case, he may reliquidate an entry within two years (exclusive of the time during which a protest is pending) after the date of liquidation or last reliquidation.

In the case at bar there is no charge of fraud and no evidence of fraud, and section 521 has no application to the case at bar. Therefore said section 514 is the only provision of the statute with respect to the finality of liquidation by the collector applicable here. Under this section the collector had no power to set aside his liquidation of July 27, 1931, after the expiration of sixty days from such date, appellant having filed no protest within such time, and the Commissioner of Customs had no power to direct a reliquidation or cancellation of the liquidation of July 27, 1931, after the expiration of said period. Inasmuch as the purported cancellation of said liquidation was void, the notice of appraisement dated May 8, 1933, was likewise void for the reason that the liquidation of July 27, 1931, had become final and was not open to question after the expiration of sixty days from the date thereof. There is no evidence in the record that appellant did not have at least constructive notice of the liquidation of July 27, 1931.

Article 741 of the Customs Regulations, 1923, paragraph (g), in force at the time of said liquidation of July 27, 1931, reads as follows:

(g) When the liquidation is completed, the entry must be stamped with the word "Liquidated," and the date of stamping. This stamp is the legal evidence of liquidation, and on the same day a bulletin notice thereof, on Customs Form 4333, must be posted in a conspicuous place in the customhouse for the information of importers.

There is no evidence that the notice of liquidation was not duly posted as required by said regulation and, under the well-established rule, the presumption is that it was so posted.

In the case of *Gallagher & Ascher* v. *United States, supra,* it was conceded that no written notice of appraisement of the merchandise there involved was given the importer prior to liquidation of the entry. About five and one-half months after the date of liquidation a protest was filed against the liquidation, claiming that the same was void because no notice of appraisement was given the importer as required by section 501 of the Tariff Act of 1922, and requesting that notice of appraisement be given the importer in accordance with the statute. We there held that, even though the liquidation were illegal, it became final so far as the importer was concerned, no protest having been filed against such liquidation within sixty days after the date thereof.

We are in accord with the conclusion of the appellate division in the case at bar that appellant's appeal to reappraisement was not timely; that the attempted cancellation of the liquidation of July 27, 1931, was void, being made more than sixty days after said date and their being in this case no question of fraud or clerical error, and that

the notice of appraisement dated May 8, 1933 was without force or effect.

As above indicated, we have found it unnecessary to decide whether section 501 of the Tariff Act of 1930 required a notice of appraisement of the merchandise in question to be given to appellant. That section requires notice of appraisement to the consignee, his agent, or attorney, if (1) the appraised value is higher than the entered value, or (2) a change in the classification of the merchandise results from the appraiser's determination of value. In the case at bar no change of classification resulted from the appraiser's determination of value. Appellant's counsel in his letters to the customs officials contended there was no entered value of the necklace and so argued before us, and that, under the customs regulations, no entered value was required. We think this contention is correct, and it would seem therefore, though we do not so decide, that the statutory provision with respect to notice of appraisement had no application to the case at bar, although under the circumstances of this case it would have been clearly inequitable not to have given appellant notice of the new or so-called "second appraisement."

However, as observed by the appellate division in its decision, the entry of foreign merchandise and the administrative, remedial, and judicial procedure with respect thereto are the subjects of special statutes which govern the disposition of this case. Whatever may be our views as to the equities of the case before us, our jurisdiction and the jurisdiction of the Customs Court is limited by statutory provisions, and such provisions must be observed.

For the reasons stated, the judgment appealed from is *affirmed*.