GUANGXI GITIC IMPORT AND EX-
PORT CORPORATION and Guanxi
Vinylon Plant, Plaintiffs,

v.

UNITED STATES, Defendant,

and

Air Products and Chemicals, Inc.,
Defendant-Intervenor.

Slip Op. 97–3.
Court No. 96–06–01579.

United States Court of
International Trade.

Jan. 8, 1997.

Aitken Irvin Lewin Berlin Vrooman & Cohn, LLP (Bruce Aitken, Michael Liberman, of counsel), Washington, DC, for Plaintiff.

Frank W. Hunger, Assistant Attorney General; David M. Cohen, Director; Lyn M. Schlit, General Counsel; James A. Toupin, Deputy General Counsel; Cynthia B. Schultz, Civil Division, Dept. of Justice, Commercial Litigation Branch; James M. Lyons, U.S. International Trade Commission, of counsel, Washington, DC, for Defendant.

Ellis & Aeschliman (David R. Busam),Columbus, OH, Edward M. Lebow (Wickens & Lebow), co-counsel, Washington, DC, for Defendant–Intervenor.

**OPINION**

POGUE, Judge:

Plaintiffs Guangxi GITIC Import and Export Corp. and Guangxi Vinylon Plant (Guangxi) seek to challenge aspects of the final affirmative material injury determination by the International Trade Commission (ITC) in its antidumping duty investigation of Polyvi-

nyl Alcohol from China, *see* Polyvinyl Alcohol from China, Japan, and Taiwan. 61 Fed. Reg. 24511 (ITC May 15, 1996) (final affirm. injury determ.), and the final affirmative antidumping duty determination by the Department of Commerce (Commerce) in Polyvinyl Alcohol from China, 61 Fed.Reg. 14057 (Dep't of Commerce March 29, 1996) (final antidumping determ.). Defendant and Defendant–Intervenor move to dismiss the action for lack of jurisdiction.

**DISCUSSION**

On June 14, 1996, Guangxi mailed a summons to the court which was deemed filed on the date of mailing pursuant to US-CIT R. 5(e).[1] On May 14, 1996, Commerce published its antidumping duty order. *See* 61 Fed.Reg. 24,286. On May 15, 1996, the ITC published its final material injury determination. 61 Fed.Reg. 24,511.[2] Thus, Guangxi's summons was filed 31 days after the publication of Commerce's antidumping duty order[3] and 30 days after publication of the ITC's final material injury determination.

The court in *American Chain Assoc. v. United States,* 13 CIT 1090, 746 F.Supp. 112 (1989), in discussing the time limitations governing actions in the court, stated:

The Tariff Act of 1930, section 516A, provides that an action challenging a final affirmative determination must be commenced by filing a summons in the court within thirty days after the date of publication of the determination in the Federal Register. 19 U.S.C. § 1516a(a)(2)[ (1994) ]. Pursuit of a civil action contesting a final revocation determination is barred unless commenced within the thirty day period specified by section 516A. *See* 28 U.S.C. § 2636(c)[1994]. It is well settled that these statutes, which supply the conditions for the waiver of sovereign immunity of the United States,

---

**1.** "[A]pleading or other paper mailed by certified or registered mail ... shall be deemed filed as of the date of mailing."

**2.** On May 6, 1996, the ITC notified Commerce by letter of its final determination that an industry in the United States was threatened with material injury by reason of imports of the subject merchandise. (Def.'s Mot. to Dismiss at 2).

**3.** The final determination upon which the order was based was published on May 7, 1996. Polyvinyl Alcohol from China, Japan, and Taiwan: Inv. Nos. 731–TA–726, 727, and 729 (Final) USITC Pub. 2960 (May 1996).

are jurisdictional in nature and must be strictly construed. *Georgetown Steel Corp. v. United States,* 4 Fed. Cir. (T) 143, 147, 801 F.2d 1308, 1312 (1986). This Court is not empowered to imply equitable exceptions. *NEC Corp. v. United States,* 5 Fed. Cir. (T) 49, 51, 806 F.2d 247, 249 (1986). *Id.* By filing its summons 31 days after publication of the antidumping duty order, plaintiff failed to timely commence its action. This Court is therefore without jurisdiction to hear the action; the government's motion to dismiss must be granted and the case dismissed.

The facts of *American Chain* help to illustrate the strictness with which statutes of limitations are enforced when the government is a defendant in an action. In *American Chain,* plaintiff packaged its summons and complaint, attached the proper amount of postage, and handed the package to an employee to take to the post office on the 30th day after publication of the order in the Federal Register. *American Chain,* 13 CIT at 1091, 746 F.Supp. at 113. On the way, the employee was hit by a car which had run a red light. *Id.* at 1092, 746 F.Supp. at 113. The employee was taken to the hospital, treated, and kept overnight for observation. *Id.* Plaintiff's counsel did not find out what had happened until the next day, at which time the papers were mailed, one day late. *Id.* Citing *NEC Corp. v. United States,* 5 Fed.Cir. (T) 49, 806 F.2d 247 (1986), the court stated, "[t]he Court is especially proscribed from enlarging the time limits for suing the government." *American Chain,* 13 CIT at 1093, 746 F.Supp. at 115. Thus, the

court concluded that "even in a situation as unfortunate and unforeseeable as the one at bar," the court could not "interpret the court rules to enlarge or extend its jurisdiction beyond the time limits under which the United States has consented to be sued." *Id.* at 1094, 746 F.Supp. at 115.

■■■ Guangxi argues that the publication of the final antidumping duty order the day before publication of the ITC's determination of material injury represented a departure from what Guangxi alleges is Commerce's long-standing practice of publishing antidumping duty orders following publication of related ITC determinations. Neither the statute nor Commerce's regulations require publication seriatim. Under the statute, "[w]ithin 7 days after being notified by the Commission of an affirmative [material injury] determination ... the administering authority shall publish an antidumping duty order...." 19 U.S.C. § 1673e(a) (1994).[4] The statute does not specify a time frame for the publication of ITC's material injury determination.

■■■ Nevertheless, Guangxi argues that in publishing the antidumping duty order first, Commerce violated "one of the basic precepts of administrative law, consistency in administrative practice," and that therefore, publication of the order prior to publication of the ITC determination had no legal effect "and can not operate to activate the period during which an appeal of an antidumping determination may be initiated." (Memo. in Opp. to Def.'s Motion to Dismiss at 4).[5] To

---

**4.** In fact, the antidumping duty order was not published until eight days after Commerce received notice from the ITC of its final affirmative material injury determination. *See* Polyvinyl Alcohol from Japan, the People's Republic of China, and Taiwan, 61 Fed.Reg. 24286, 24287 (Dep't of Comm. May 14, 1996) (antidumping duty order) (stating that Commerce received notice from the ITC on May 6, 1996). The fact that Commerce took eight days rather than seven to publish its order has no bearing on the Court's decision in this case because unless statutory timetables for administrative agencies are accompanied by consequential language, they are to be considered directory rather than mandatory. *See Canadian Fur Trappers Corp. v. United States,* 7 Fed. Cir. (T) 136, 139, 884 F.2d 563, 566 (1989).

**5.** Defendants also presented an affidavit stating that an employee of this Court informed them that if a party was appealing the determinations of both Commerce and the ITC, the 30–day filing period would begin on the latter of the publication dates, in this case, May 15, the date of publication of the ITC determination. The affidavit forms the basis of a claim for equitable estoppel. "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases.... [T]he party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse." *Heckler v. Comm. Health Serv. of Crawford Co., Inc.,* 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42, (1984).

In *Heckler,* the Supreme Court stated that the truth about the misrepresented material facts must be *unknown* to the party claiming estoppel,

support this argument, Guangxi cites *Morton v. Ruiz,* 415 U.S. 199, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). In *Morton,* the Bureau of Indian Affairs (BIA) denied benefits to a native American family solely because the family was not living on a Reservation. The Supreme Court found that the agency's denial was inconsistent with its long-standing policy of providing assistance to families living "on or near" reservations. The Court ruled that the agency was obligated to provide assistance to the plaintiff because, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Id.* at 235, 94 S.Ct. at 1074.

■ *Morton* is not controlling in this case. The time limitation for commencement of a civil action in the Court of International Trade is set forth in the statute, which would not be affected by a contrary agency practice. Moreover, publication of the antidumping order prior to publication of the ITC final determination has occurred numerous times [6] indicating that seriatim publication was not a long-standing administrative practice.

■ Guangxi also argues that publication of the ITC order was required to give that order legal effect. In other words, Guangxi argues that it was not "aggrieved" by the ITC determination until after it was published. "Thus, the effects of the publication of the antidumping order on May 14, 1996, triggering the start of the period during which an appeal of that determination must be filed must be tolled until May 15, 1996,...." (Memo. in Opp. to Def.'s Motion to Dismiss at 7). Guangxi claims the ITC determination here was particularly significant because Guangxi expected to be excluded from the affirmative determination. Therefore, Guangxi

argues that "the antidumping order of May 14, 1996 was, as a matter of law, neither adequate nor meaningful to Guangxi because Guangxi had yet to have formal or informal substantive notice of its inclusion in the determination upon which that order was based...."

The Court does not agree. The "legal significance of the final antidumping duty order ... [is] *as a signal that the time to bring an action for judicial review of the less than fair value and injury determinations [is] beginning to run.*" *Royal Business Machines v. United States,* 1 CIT 80, 87–88, 507 F.Supp. 1007, 1014 (1980). Similarly, in this case, the publication of the antidumping duty order setting a margin of 116.75% for Guangxi should have signaled it that the 30–day time period for filing its summons had started to run. Consequently, the Court cannot accept Guangxi's argument that it was not aggrieved until the ITC determination was published in the Federal Register.

Plaintiff also argues that based on the Administrative Procedure Act (APA), the ITC determination was a "rule," as opposed to an adjudicative decision, and that "[t]he APA explicitly states that no order or statement of policy may adversely affect a member of the public unless that determination has been published." (Memo. in Opp. to Def.'s Motion to Dismiss at 6). In fact, the provision to which plaintiff is referring says:

[e]xcept to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner ... be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons af-

---

and that if at the time the party acted, the party had knowledge of the truth, "or had the means by which with reasonable diligence he could acquire the knowledge ... he cannot claim to have been misled by relying upon the representation or concealment." *Id.* (citing III J. Pomeroy, *Equity Jurisprudence* § 810, at 219 (S. Symonds ed.1941)).

In the case now before the Court, the clarity of the statute undermines defendant's claim of equitable estoppel.

**6.** *See, e.g.,* Canned Pineapple Fruit From Thailand, 60 Fed.Reg. 36,775 (July 18, 1995)(notice

of antidumping duty order & amend. final deter.); Canned Pineapple Fruit From Thailand, 60 Fed.Reg. 37,073 (July 19, 1995); Furfuryl Alcohol From Thailand, 60 Fed.Reg. 38,035 (July 25, 1995)(amend. final deter. & order); Furfuryl Alcohol From Thailand, 60 Fed.Reg. 38,366 (July 26, 1995); Polyvinyl Alcohol From Japan, the People's Republic of China, and Taiwan, 61 Fed. Reg. 24,286 (May 14, 1996)(notice of antidumping duty orders); Polyvinyl Alcohol From Japan, the People's Republic of China, and Taiwan, 61 Fed.Reg. 24,511 (May 15, 1996).

fected thereby is deemed published in the Federal Register when incorporated by reference therein. . . .

5 U.S.C. § 552(a)(1)(E). Thus, even if the Court were to accept Guangxi's assertion that the ITC determination was a rule, Guangxi had actual and timely notice of the terms of that determination, which were published on May 7 in Polyvinyl Alcohol from China, Japan, and Taiwan: Inv. Nos. 731–TA–726, 727, and 729 (Final) USITC Pub. 2960 (May 1996), and incorporated by reference into Commerce's antidumping duty order.

This action, having been commenced beyond the 30 day period specified by the statute, must be dismissed as untimely. Judgment will be entered accordingly.

### JUDGMENT

Upon reading motions to dismiss of Defendant and Defendant–Intervenor, and Plaintiff's response thereto, and upon consideration of all other papers and proceedings had herein, and after due deliberation, having rendered a decision herein, it is hereby:

ORDERED that the motions to dismiss are hereby granted; and it is further

ORDERED that the action be, and hereby is, dismissed.