**US JVC CORP., Plaintiff,**

v.

**UNITED STATES, Defendant.**

**Slip Op. 98–97.**
**Court No. 96–01–00192.**

United States Court of
International Trade.

July 7, 1998.

Galvin & Mlawski, (Jack D. Mlawski), New York City, for Plaintiff.

Frank W. Hunger, Assistant Attorney General, Washington, DC; Joseph I. Liebman, Attorney–in–Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (John J. Mahon ), New York City; Office of Assistant Chief Counsel, United States Customs Service (Beth C. Brotman ), of counsel, for Defendant.

## OPINION

GOLDBERG, Judge.

In this case, the Court decides whether the ninety-day period for filing a protest in 19 U.S.C. § 1514(c)(3) (1994) is subject to equitable tolling. Both parties agree that plaintiff, U.S. JVC Corp. ("JVC"), failed to protest the liquidation of certain color television receivers from Taiwan within ninety-days after Defendant, the United States Customs Service ("Customs"), issued bulletin notices of liquidation. The parties disagree, however, on how this fact should affect the outcome of this case. Customs argues that the failure to file a timely protest deprives the Court of subject-matter jurisdiction. On the other hand, JVC contends that the Court can, and indeed should, equitably toll the ninety-day period when Customs notifies an importer that liquidation of its merchandise is suspended, and proceeds to liquidate it anyway. Although sympathetic to JVC's position, the Court holds that the ninety-day period for filing protests set forth in 19 U.S.C. § 1514(c)(3) is not subject to equitable tolling. Thus, the Court is forced to dismiss this action for lack of subject-matter jurisdiction.

## BACKGROUND

This case revolves around the premature liquidation of seventeen entries of color television receivers imported by JVC between April 4, 1990 and November 11, 1990. The receivers were manufactured in Taiwan by Kuang Yuan Co., Ltd. ("Kuang Yuan") and were subject to an antidumping duty order. *Color Television Receivers, Other Than Video Monitors, From Taiwan; Antidumping Duty Order,* 49 Fed.Reg. 18337 (Apr. 30, 1984) (*"Taiwanese Receivers "*). As a result, when JVC entered the receivers into the United States, it was required by law to deposit estimated antidumping duties with

Customs.[1] *See* 19 U.S.C. § 1673e (assessment of duty); 19 U.S.C. § 1675 (administrative review of determinations). Shortly thereafter, Customs notified JVC in writing that liquidation of the entries was suspended.

In early 1992, Commerce initiated its seventh administrative review of the antidumping duty order, which ultimately set the actual antidumping rate for color television receivers imported from Taiwan between April 1, 1990 and March 31, 1991, including the receivers imported by JVC at issue here. *See Color Television Receivers, Except for Video Monitors, From Taiwan; Preliminary Results of Antidumping Duty Administrative Review*, 57 Fed.Reg. 555 (Jan. 7, 1992); *Color Television Receivers, Except for Video Monitors, From Taiwan; Final Results of Antidumping Administrative Review*, 57 Fed.Reg. 20241 (May 12, 1992) (*"Final Results Seventh Review"*). On January 9, 1992, pending completion of the seventh review, Commerce directed Customs to continue to suspend the liquidation of the receivers manufactured by Kuang Yuan until it was specifically instructed otherwise. *See E–Mail No. 2009116* (Jan. 9, 1992) (Director, Import Specialist Division to Regional Directors, Commercial Operations District, Area and Port Directors).

Contrary to these directions, on February 28, 1992, Customs erroneously liquidated the seventeen entries of receivers at the estimated antidumping duty deposit rate(s) and posted bulletin notices of the liquidations.

Meanwhile, because JVC knew that Commerce had ordered Customs to suspend the liquidation of receivers manufactured by Kuang Yuan, and because the receivers that it imported were manufactured by Kuang Yuan, JVC never checked to see if bulletin notices of liquidation were posted for its entries. Thus, JVC was unaware of Customs' mistake.

On May 12, 1992, Commerce published the final results of the seventh administrative review. It determined that, for the period of review, no antidumping duties should be assessed on the receivers manufactured by Kuang Yuan. *Final Results Seventh Review*, 57 Fed.Reg. at 20245. Subsequently, on September 27, 1995, Commerce instructed Customs to liquidate the color television receivers at issue here with a dumping margin of 0.00 percent.[2]

At some point thereafter, JVC asked Customs to refund the estimated antidumping duty deposits for the seventeen entries. Customs denied this request, presumably because the seventeen entries had already been liquidated almost four years earlier. On December 26, 1995, JVC filed a protest challenging the premature liquidations, which Customs denied one day later because it was untimely. JVC then filed suit in this Court, arguing first that the Court should equitably toll the time limitation for filing a protest; and second that Customs should refund the estimated antidumping duties that JVC deposited with Customs. Customs responded

1. Neither party discusses either what antidumping duty deposit rate(s) applied to JVC, or how much money JVC deposited with, and ultimately paid to Customs. The Court infers from the record that Customs used two different deposit rates, depending upon when the receivers entered the United States: a rate of 5.46 percent was used for receivers entered before May 23, 1990; and a rate of .54 percent was used for receivers entered after May 23, 1990. *See Taiwanese Receivers*, at 18338 (all others rate); and *Color Television Receivers, Except for Video Monitors, From Taiwan; Preliminary Results of Antidumping Duty Administrative Review and Intent to Revoke in Part*, 55 Fed.Reg. 21210, 21212 (May 23, 1990) (Kuang Yuan rate).

2. After Commerce published the final results, several review participants challenged their va-

lidity on unrelated grounds. *See AOC Int'l v. United States*, 18 CIT 1102 (1994). As a result, over three years elapsed before Commerce instructed Customs to liquidate JVC's entries. JVC suggests that an order issued by the reviewing court in *AOC Int'l* is relevant in this case. The order enjoined Customs from liquidating entries of color television receivers manufactured by, *inter alia*, Kuang Yuan. *See Compl.* ¶ 9; Pl.'s Resp. to Def.'s Mot. to Dismiss for Lack of Jurisdiction at 2 ("Pl.'s Resp."). JVC's suggestion is without merit. The reviewing court explicitly limited the scope of the order to those entries that Customs had not yet liquidated on June 12, 1992. *See* Order Granting Prelim. Inj., Ct. No. 92–06–00371 (June 12, 1992). Hence, by definition, the order could not include the entries at issue here because they had already been liquidated on February 28, 1992.

by filing the instant motion to dismiss for lack of subject-matter jurisdiction.

## DISCUSSION

■ Title 28 U.S.C. § 1581(a) confers exclusive jurisdiction in the Court of International Trade over suits against the United States "to contest the denial of a protest, in whole or in part." This jurisdictional grant is not unqualified, however, and must be read to incorporate the requirements of 19 U.S.C. § 1514. *Juice Farms, Inc. v. United States,* 68 F.3d 1344, 1345 (Fed.Cir.1995). Section 1514(a) provides that "decisions of the Customs Service, including the legality of all orders and findings entering into the same, as to ... the liquidation or reliquidation of an entry ... shall be final and conclusive upon all persons (including the United States and any officer thereof) unless a protest is filed in accordance with this section...." Section 1514(c)(3), in turn, states that "[a] protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after ... notice of liquidation or reliquidation...." Read together, the ramification of these sections is clear: a protest must have been timely filed under 19 U.S.C. § 1514(c)(3) for this Court to obtain jurisdiction over a suit that contests its denial.

■ JVC concedes, as it must, that it failed to comply with these statutory requirements. After all, no change liquidations are protestable decisions under 19 U.S.C. § 1514(a).[3] *LG Elecs. U.S.A. v. United States,* —— CIT ——, ——, 991 F.Supp. 668, 673 (1997). Here, Customs posted bulletin notices of the seventeen liquidations on February 28, 1992.[4] And, JVC failed to file a protest challenging them until December 26, 1995, nearly four years later. Plainly then, JVC did not comply with the statutory filing requirements for protests.

■ Notwithstanding this, JVC contends that dismissal for lack of subject-matter jurisdiction is unwarranted because under equitable tolling principles, the Court may excuse its error. JVC's logic proceeds as follows. Drawing on the Federal Circuit's decision in *Juice Farms,* JVC first argues that the Court of Appeals for the Federal Circuit has recognized that the time period imposed by 19 U.S.C. § 1514(c)(3) contains an implied exception for equitable tolling. *See* Pl.'s Resp. at 4. JVC then posits that equitable tolling is justified in this case because JVC would have checked for bulletin notices of liquidation, and thus discovered that its entries had been liquidated in time to file a timely protest, if JVC had not received written notices from Customs stating that its entries would not be liquidated until the results of the seventh administrative review were finalized.[5] *Id.* at 5.

3. When the estimated antidumping duty rate for an entry is the same as its actual antidumping duty rate, Customs liquidates the entry as "no change."

4. It is well established that bulletin notices satisfy the statutory notice of liquidation requirement, and thereby trigger the ninety-day period for filing a protest. *Juice Farms,* —— Fed. Cir. (T) at ——, 68 F.3d at 1346; *Tropicana Prods., Inc. v. United States,* 8 Fed. Cir. (T) 145, 148–49, 909 F.2d 504, 506–07 (1990).

5. In its complaint, JVC argues in the alternative that the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(i), the Court's residual jurisdiction provision. Specifically, JVC asks the Court to exercise its residual jurisdiction because JVC failed to file a timely protest only because it relied upon the written suspension notices that it received from Customs. *See Compl.* at ¶¶ 13, 21, 22. Although JVC has not pursued this argument in either its response to Customs' motion or in its subsequent motion to

strike and for leave to file a sur-reply, the Court has nevertheless considered and rejected it.

It is well established that jurisdiction under § 1581(i) is limited to those cases in which relief would otherwise be "manifestly inadequate." *Juice Farms,* —— Fed. Cir. (T) at ——, 68 F.3d at 1346 (quoting *Conoco, Inc. v. United States Foreign–Trade Zones Bd.,* —— Fed. Cir. (T) ——, ——, 18 F.3d 1581, 1584 (1994)); *accord Omni U.S.A., Inc. v. United States,* 6 Fed. Cir. (T) 99, 104, 840 F.2d 912, 915 (1988). Here, JVC's plea for jurisdiction under § 1581(i) is based on the same analysis that JVC uses to support its claim for equitable tolling and jurisdiction under § 1581(a). Importantly, the relief provided in another subsection of § 1581, *e.g.,* § 1581(a), does not become manifestly inadequate simply because a plaintiff has failed to properly invoke it. *Juice Farms,* —— Fed. Cir. (T) at ——, 68 F.3d at 1346. In this case, had the Court accepted JVC's equitable tolling argument, it would have tolled the statutory filing period imposed by 19 U.S.C. § 1514(c)(3), and thereby exercised jurisdiction under 28 U.S.C. § 1581(a). Since, how-

Customs' central response to this argument is factual. That is, Customs does not dispute that courts can toll the ninety-day period for filing protests. *See* Def.'s Resp. to Pl.'s Opp'n to Def.'s Mot. to Dismiss for Lack of Jurisdiction at 7–8 ("Def.'s Reply"). Instead, it argues the circumstances described by JVC do not justify doing so. Specifically, Customs contends that equitable tolling is only available when a prospective

defendant has *induced* or *tricked* a plaintiff into allowing a filing deadline to pass.[6] Def.'s Reply at 8–9 (emphasis added). Because the facts positively demonstrate that Customs never engaged in any trickery, Customs argues that equitable tolling is unwarranted in this instance.

The Court has no occasion to rule on whether the facts of this case would justify tolling the ninety-day period because it finds

ever, the Court rejects JVC's equitable tolling argument, it concludes that the protest was not timely filed and jurisdiction under § 1581(a) is thus unavailable. Furthermore, because JVC could have obtained judicial review by filing a timely protest, jurisdiction under § 1581(i) is also necessarily foreclosed. *Omni*, 6 Fed. Cir. at 104, 840 F.2d at 915.

6. Although ultimately unimportant in this case, the Court notes that throughout its reply brief Customs conflates the two independent doctrines of equitable tolling and equitable estoppel, implying that JVC improperly invokes the latter. While both doctrines allow a Court to toll filing deadlines in favor of a plaintiff, the circumstances in which they may be invoked differ. Equitable tolling does not require, as Customs suggests, a plaintiff to demonstrate that a prospective defendant has actively sought to prevent the plaintiff from suing in time (*e.g.*, by promising not to plead the statute of limitations). However, a plaintiff must make such a showing in order to invoke equitable estoppel. *See Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990) (contrasting the doctrine of equitable tolling with the doctrine of equitable estoppel). In contrast, equitable tolling is available so long as the plaintiff has exercised due diligence in pursuing his or her claim. *Wolin v. Smith Barney, Inc.*, 83 F.3d 847, 852 (7th Cir.1996) ("[W]hen the plea is equitable tolling rather than equitable estoppel, the defendant is innocent of the delay (though not of course the original wrong), so the plaintiff must use due diligence to be allowed to toll the statute of limitations; . . . ."). Equitable tolling is the only relevant doctrine in this case: JVC essentially asks the Court to rule that due diligence does not require an importer to monitor for bulletin notices of liquidation for an entry when the importer is notified that liquidation of that entry is suspended. This is an argument based not on equitable estoppel principles, but on equitable tolling principles. Hence, whether Customs induced or tricked JVC into missing the filing deadline is not an issue in this case.

Furthermore, the Court is unpersuaded by Customs' related argument that the doctrine of equitable estoppel is wholly unavailable in suits against the United States when the United States acts in its sovereign capacity. *See* Def.'s Reply at 9–10. First, and perhaps most importantly, when, in *Irwin v. Department of Veterans Affairs*,

498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), the Supreme Court created a rebuttable presumption that equitable tolling is a defense to missed filing deadlines in suits against the United States, the Supreme Court "explicitly (albeit in dictum) treat[ed] equitable estoppel as a form of equitable tolling." *Goodhand v. United States*, 40 F.3d 209, 213 (7th Cir.1994) (citing *Irwin*, 498 U.S. at 96, 111 S.Ct. 453). In so doing, the Supreme Court implicitly treated equitable estoppel as a subset of equitable tolling. *Id.*; *RHI Holdings v. United States*, 142 F.3d 1459, 1461, 1998 WL 217867, at * 3 (Fed.Cir.1998). Thus, even if JVC's claim invoked the doctrine of equitable estoppel, the Court would still be required to review § 1514 in order to answer the threshold question, can courts toll the deadline for filing protests imposed by § 1514(c)(3)?

Finally, Customs' reliance on *Dazzle Mfg., Ltd. v. United States*, —— CIT ——, 971 F.Supp. 594 (1997), for support of this proposition is misplaced. It is true that the *Dazzle* court rejected the plaintiff's argument that the court could excuse on equitable grounds plaintiff's failure to timely comply with 28 U.S.C. § 2637(a)(1994) by paying all duties, charges, or exactions owed before it commenced suit. *Id.* However, it did so in part because it construed 28 U.S.C. § 2637(a) as a jurisdictional requirement that "must be strictly construed since the court has no power to relax the statutory preconditions for waiver of sovereign immunity." *Id.*, —— CIT at ——, 971 F.Supp. at 596 (citations omitted). While this Court does not quarrel with the result in *Dazzle*, it does not agree that statutory time limitations *a fortiori* foreclose the possibility of excuse on equitable grounds. *See Irwin*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (creating a rebuttable presumption that tolling principles are available defenses to missed filing deadlines in suits against the United States). Whether or not a specific statute contains an implied equitable tolling exception to statutory filing deadline depends upon the language, structure, and purpose of the statute. *See, e.g., United States v. Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997). Here, the Court is faced with an entirely different statute, 19 U.S.C. § 1514, and accordingly assesses its language, structure, and purpose to determine if an equitable tolling exception to the ninety-day filing period is available.

that this period is not subject to equitable tolling. Accordingly, for the following reasons, the Court grants Customs' motion to dismiss.

## I.

■■■■■ The doctrine of equitable tolling permits a plaintiff to avoid the bar of a statute of limitations if, "despite all due diligence, [the plaintiff] is unable to obtain essential information concerning the existence of [his or her] claim." *Weddel v. Secretary of Health and Human Servs.*, 100 F.3d 929, 931 (Fed.Cir.1996) (citing *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir.1990)).

Before the Supreme Court's decision in *Irwin*, 498 U.S. 89, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), any argument that the time period in 19 U.S.C. § 1514(c)(3) could be equitably tolled was clearly doomed. Courts viewed a timely filed protest as a jurisdictional prerequisite that could not be excused on equitable grounds.[7] *See, e.g., United States v. Reliable Chem. Co.*, 66 C.C.P.A. 123, 605 F.2d 1179 (1979); *United States v. A.N. Deringer, Inc.*, 66 C.C.P.A. 50, 593 F.2d 1015 (1979); *United States v. Boe*, 64 C.C.P.A. 11, 543 F.2d 151 (1976); *Old Republic Ins. Co. v. United States*, 10 CIT 1, 625 F.Supp. 983 (1986). These decisions were based on well-settled principles of sovereign immunity: since the United States can only be sued if it explicitly waives its sovereign immunity, and the terms of a statute waiving sovereign immunity define the court's jurisdiction, it logically followed that the terms of the waiver, including any time limitations, must be strictly construed. *See, e.g., United States v. Dalm*, 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *United States v. Mottaz*, 476 U.S. 834, 841, 106 S.Ct. 2224, 90 L.Ed.2d 841 (1986); *Block v. North Dakota*, 461 U.S. 273, 287, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983); *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Boe*, 64 C.C.P.A. 11, 15–16, 543 F.2d 151, 154–55; *John S. Phipps v. United States*, 22 C.C.P.A. 595, 602 (1935) ("Whatever may be our views as to the equities of the case before us, our jurisdiction and the jurisdiction of the Customs Court is limited by statutory provisions, and such provisions must be observed.").

In *Irwin*, the Supreme Court relaxed the theory underlying these decisions by creating a rebuttable presumption that equitable tolling is available in suits against the United States. *Irwin*, 498 U.S. at 95–96, 111 S.Ct. 453. Importantly, however, this case did not signal a retreat from the basic premise of sovereign immunity, namely that "[a] waiver

---

7. The decision in *Farrell Lines, Inc. v. United States*, 69 C.C.P.A. 1, 657 F.2d 1214 (1981), is the only noteworthy exception and the validity of its holding is, at best, unclear. In *Farrell Lines*, the plaintiff sought remission of duties that Customs assessed on repairs made on an American vessel while it was overseas. Customs liquidated the vessel repair entry without remitting the duties, and while plaintiff petitioned for administrative review of that decision, it never filed a timely protest of the liquidation. After Customs denied the petition, plaintiff protested the decision to deny the petition. When Customs denied the protest, plaintiff sued. The district court agreed with Customs and dismissed the case, concluding that it lacked subject-matter jurisdiction because plaintiff's protest was filed more than ninety-days after notice of the liquidation was given.

On appeal, a majority on the court rejected Customs' argument and tolled the ninety-day period for filing a protest. *Id.* In doing so, the majority initially noted that the applicable regulations confused both Customs and the plaintiff, and that both parties acted in good faith. It further reasoned that (1) treating the petition for review as something other than a protest would "elevate form over substance"; and (2) tolling the period for filing a protest was consistent with the purpose of 19 U.S.C. § 1466(a), which allows Customs to remit duties assessed on overseas repairs of American vessels.

Yet, importantly, the majority failed to discuss either the purpose underlying the ninety-day period for filing a protest or its jurisdictional ramifications. *See Farrell Lines, Inc. v. United States*, 69 C.C.P.A. at 7, 10, 667 F.2d 1017, 1018 (Markey dissenting) ("In the dispositive portion of our opinion, it was held that the 90–day period for filing a protest to liquidation was tolled pending administrative review of [the] petition ... for cancellation of duties.... That application of tolling, however, overlooked the jurisdictional aspect of the 90–day period...."). The decision in *Farrell Lines* has only been followed once. *See Sea–Land Serv., Inc. v. United States*, 17 CIT 61, 812 F.Supp. 222 (1993), *vacated as moot* 17 CIT 649, 829 F.Supp. 393 (1993). Generally, when faced with *Farrell Lines*, the court has either sought to clarify and limit its holding, or have found it inapposite. *See, e.g., Transmarine Navigation Corp. v. United States*, 7 CIT 42 (1984); *Wally Packaging v. United States*, 7 CIT 19, 578 F.Supp. 1408 (1984); *Noury Chem. Corp. v. United States*, 4 CIT 68 (1982).

of sovereign immunity cannot be implied but must be unequivocally expressed." *Irwin,* 498 U.S. at 95, 111 S.Ct. 453 (internal quotations and citations omitted). Rather, *Irwin* represents an acknowledgment that "[o]nce Congress has made such a waiver, ... making the rule of equitable tolling applicable to suits against the Government, in the same way that it is applicable to private suits, amounts to little, if any, broadening of the congressional waiver.... Congress, of course, may provide otherwise if it wishes to do so." *Id.*

By creating a presumption in favor of equitable tolling, *Irwin* has changed how courts approach statutory filing periods. And thus, *Irwin* "seem[s] to have overruled or made irrelevant prior case law which sought to determine whether a particular limitations period could be tolled by determining whether the time limit was jurisdictional or not." *Oropallo v. United States,* 994 F.2d 25, 29 n. 4 (1st Cir.1993) (per curium); *accord Cedars–Sinai Medical Ctr. v. Shalala,* 125 F.3d 765, 770 (9th Cir.1997) (internal quotations and citations omitted) ("[E]arlier statements that statutes of limitations are jurisdictional in nature have no continuing validity after the Court's decision in *Irwin.*"); *Kanar v. United States,* 118 F.3d 527, 530 (7th Cir.1997) (assessing whether a filing deadline is available in a tort suit by analyzing the "text and the functions of the [Federal Torts Claim Act], not ... whether the definition of claim ought to be called 'jurisdictional' "). Hence, after *Irwin,* this Court cannot simply dismiss JVC's claim that the ninety-day period for filing protests should be tolled based on pre-*Irwin* precedent holding that the period is jurisdictional.[8]

Instead, the Court must assess whether reading an implied exception for equitable

tolling into 19 U.S.C. § 1514 would unduly broaden the congressional waiver of sovereign immunity in 28 U.S.C. § 1581(a). *See, e.g., Brockamp,* 117 S.Ct. at 851 (holding that 26 U.S.C. § 6511 does not contain an implied exception for equitable tolling after answering "Irwin's negatively phrased question: Is there good reason to believe that Congress did not want the equitable tolling doctrine to apply?").

## II.

In deciding whether the presumption that 19 U.S.C. § 1514 contains an implied exception for equitable tolling has been rebutted, the Court recognizes that it does not begin with a clean slate. In *Juice Farms,* 68 F.3d 1344 (Fed. Cir.1995), the only Federal Circuit opinion that discusses how *Irwin* implicates § 1514, the court assumed, without deciding, that § 1514 allows courts to toll the ninety-day period. Specifically, the *Juice Farms* court noted that *Irwin* "sets forth standards for tolling a statute of limitations in suits against the Government." *Juice Farms,* —— Fed. Cir. (T) at ——, 68 F.3d at 1346. Yet, the *Juice Farms* court refrained from engaging in a detailed analysis of *Irwin,* that is whether the language, structure, and purpose of § 1514 rebuts the existence of an implied exception for equitable tolling. Instead, the *Juice Farms* court summarily stated that courts can only toll statutory time limitations when the Government has induced or tricked the plaintiff into missing the filing deadline.[9] *Id.*

Based on this understanding of *Irwin,* the *Juice Farms* court rejected the plaintiff's tolling argument on its merits, concluding that the circumstances did not excuse plain-

---

**8.** The Court notes that its decision to revisit the issue of equitable tolling in light of *Irwin* has not been shared by other opinions. *See, e.g., Guangxi Gitic Import and Export Corp. v. United States,* —— CIT ——, 955 F.Supp. 1477 (1997) (citations omitted) (holding that time period for filing summons in action challenging an antidumping duty determination could not be tolled because the court was not empowered to imply equitable exceptions); *Feldspar Corp. v. United States,* 16 CIT 1067, 809 F.Supp. 971 (1992) (same). Although the Court does not presume to comment

on the correctness of these decisions, it finds their use of pre-*Irwin* precedent and analysis troubling.

**9.** Curiously, the *Juice Farms* court further observed that "*Irwin* also weighs [the plaintiff's] diligence in determining whether to toll a limitation period." *Juice Farms,* —— Fed. Cir. (T) at ——, 68 F.3d at 1346. In so doing, the *Juice Farms* court fused the doctrines of equitable estoppel and equitable tolling. *See* discussion *supra* note 5.

tiff's inaction.[10] *Juice Farms,* —— Fed. Cir. (T) at ——, 68 F.3d at 1346. Thus, it affirmed the district court's decision to dismiss the plaintiff's claim for lack of subject-matter jurisdiction on a purely factual basis. *Id.*

By taking this approach, however, the Federal Circuit left unanswered the threshold question—does the language, structure, and purpose of § 1514 rebut the presumption that courts can toll the ninety-day period for filing protests imposed by § 1514(c)(3)? And, because the availability of equitable tolling is still an open question, the Court takes this opportunity to answer it.

### III.

■ Since 28 U.S.C. § 1581(a) clearly waives the Government's immunity from suit, the Court focuses on 19 U.S.C. § 1514 and whether it either expressly or by fair implication provides for equitable tolling. In doing so, the Court may not enlarge the waiver beyond the purview of the statute and any ambiguities must be construed in favor of immunity. *United States v. Williams,* 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995).

To discern congressional intent on this issue, the Court turns first to the language and structure of § 1514, which details the procedures for filing a protest and the ramifications for failing to do so in a timely manner. Section 1514(c)(3) sets forth the time limitation for filing a protest. As discussed earlier, it provides that "[a] protest of a decision, order, or finding described in subsection (a) of this section shall be filed with the Customs Service within ninety days after but not before—[ ] notice of liquidation or reliquidation. . . ." 19 U.S.C. § 1514(c)(3). Its language is fairly simple, and in other contexts, it could reasonably be interpreted as subsuming an implied exception for equitable tolling (indeed, an exception that cannot be rebutted).

Importantly, however, § 1514(c)(3) does not stand alone. Rather, it is explicitly incorporated into § 1514(a). Unlike its counterpart, § 1514(a) is a highly detailed provision containing language that excludes any inference that Congress intended courts to have the power to equitably toll the time period in § 1514(c)(3). It provides as follows:

> Except as provided in subsection (b) of this section [relating to determinations implicating the North American Free Trade Agreement or the United States–Canada Free–Trade Agreement], section 1501 of this title (relating to voluntary reliquidations), section 1516 of this title (relating to petitions by domestic interested parties), and section 1520 of this title (relating to refunds and errors), decisions of the Customs Service, including the *legality* of all orders and findings entering into the same, as to—
>
> . . .
>
> (2) the classification and rate and amount of duties chargeable;
>
> . . .
>
> (5) the liquidation or reliquidation of an entry, or reconciliation as to the issues contained therein, or any modification thereof;
>
> . . .

shall be *final and conclusive* upon all persons (including the United States and any

---

**10.** Like the instant case, *Juice Farms* involved entries subject to valid suspension orders that were prematurely liquidated by Customs. The *Juice Farms* plaintiff argued that it failed to timely protest the erroneous liquidations because it relied on suspension notices sent by Customs. And like JVC, the *Juice Farms* plaintiff asked the court to toll the period for filing protests based on *Irwin. Juice Farms,* —— Fed. Cir. (T) at ——, 68 F.3d at 1345–46. The court rejected this argument, reasoning that

> the Government provided bulletin notices of Customs' admittedly premature liquidations. Juice Farms bore the burden of examining

those notices and protesting within the statutory time limits. Juice Farms could have challenged the legality of the liquidations by timely filing a protest under 19 U.S.C. § 1514(a). Juice Farms' own lack of diligence caused its untimely filing.

*Id.,* —— Fed. Cir. (T) at ——, 68 F.3d at 1346.

Because the facts of this case so closely parallel the facts of *Juice Farms,* even if the Court had determined that § 1514 permits equitable tolling, it still would have been compelled to reject JVC's claim on the merits. Thus, under either approach, the Court would dismiss this action for lack of subject-matter jurisdiction.

officer thereof) unless a protest is filed in accordance with this section. . . .

19 U.S.C. § 1514(a) (emphasis added).

Section 1514(a) cannot be read to include, either explicitly or implicitly, an equitable tolling exception. The words "final and conclusive" are hardly ambiguous: final means "not to be altered or undone," and conclusive means "so irrefutable as to end all uncertainty or question." *Webster's Third New International Dictionary of The English Language Unabridged* 851, 471 (1986). Their meaning would be eviscerated if courts could review the merits of Customs' decisions that were not timely protested whenever they determined that equity demanded it.

The Court also finds the use of the word "legality" in § 1514(a) significant. It demonstrates Congress contemplated that some patently incorrect Customs' decisions would escape judicial review because it prevents a plaintiff from escaping the timely protest requirement by arguing that Customs' decision is legally suspect. This, in turn, suggests that Congress deliberately chose to accept the occasional inequitable result in order to foster greater certainty, predictability, and repose.

In addition, § 1514(a) sets forth explicit exceptions to the ninety-day limit for filing protests that notably does not include an open-ended provision for equitable tolling. *See* 19 U.S.C. § 1514(a) (establishing different procedures when a decision implicates § 1514(b); § 1501, voluntary reliquidations; § 1516, petitions from domestic interested parties; or § 1520, refunds and errors). The exceptions are very specific, highly detailed, and well-developed. *See, e.g.,* § 1501 (within ninety days of the original liquidation, Customs may reliquidate an entry on its own initiative); § 1516 (a domestic interested party has thirty days to notify Customs that it wants to challenge how Customs liquidated designated imported merchandise). Indeed, one of the exceptions, 19 U.S.C. § 1520, squarely addresses JVC's situation.

Section 1520 authorizes Customs to reliquidate an entry, refunding excess deposits even if an importer failed to file a valid protest when reliquidation corrects

a clerical error, mistake of fact, or other inadvertence, whether or not resulting from or contained in electronic transmission, not amounting to an error in the construction of the law, adverse to the importer and manifest from the record or established by documentary evidence, in any entry, liquidation, or other customs transaction, when the error, mistake, or inadvertence is brought to the attention of the Customs Service within one year after the date of the liquidation or exaction; . . . .

19 U.S.C. § 1520(c). If a party in JVC's position timely (*i.e.,* within one year after the date of liquidation) notifies Customs of its mistake and Customs refuses to reliquidate the entry, the party can then protest that refusal under § 1514. *Omni,* 6 Fed. Cir. (T) at 101, 840 F.2d at 913. Thus, once the premature liquidations occurred, JVC had either ninety-days to file a timely protest or one year to notify Customs of its mistake. JVC did neither.

By enacting § 1520, Congress recognized a limited set of circumstances in which parties like JVC have two bites at the proverbial apple. In so doing, Congress spoke specifically on when the ninety-day period for filing protests may be relaxed, and for how long. Against this backdrop, it would be incongruous for this Court to read an additional exception into § 1514, especially one so nebulous as equitable tolling.

Subsequent acts by Congress further underscore this point. In various situations, Congress itself has determined that circumstances warrant tolling, or even waiving, the time period for filing protests. In these situations, Congress has carved out specific statutory exceptions to § 1514. *See, e.g.,* S.Rep. No. 104–393, at 8 (1996), 1996 U.S.C.C.A.N. 4036, 4043 (directing Customs to reliquidate certain entries of color televisions that were subject to a suspension order and prematurely liquidated even though importer failed to file a timely protest); S.Rep. No. 104–393, at 27, 1996 U.S.C.C.A.N. at 4062 (same involving certain entries of frozen concentrated orange juice); S.Rep. No. 104–393, at 30, 1996 U.S.C.C.A.N. at 4065 (same involving certain entries of live swine); S.Rep. No. 104–393, at 14, 1996 U.S.C.C.A.N.

at 4049 (directing Customs to treat re-entry of four warp knitting machines as duty-free even though a timely protest was not filed); H.R.Rep. No. 102–634, at 91 (1992) (tolling the time for filing a protest for twenty-seven entries of synthetic filament fibers); H.R. Conf. Rep. No. 101–650, at 75 (1990) (tolling ninety-day period for filing protests for two entries); S.Rep. No. 98–308, at 33 (1983) (directing Customs to reliquidate two entries of scientific equipment even though no timely protest was filed). These acts demonstrate that JVC's remedy lies not with the courts, but with Congress.

Finally the Court notes that its finding is fully consistent with the underlying subject matter of the statute, the collection of tariffs and duties. The Customs Service is the second largest tax collection agency in the Government. In 1992 alone, Customs collected $20.2 billion in revenue. *See* H.R.Rep. No. 103–868 Part 1, at 2 (1994). In this respect, the Court finds the reasoning of the Supreme Court in *Brockamp*, 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818, both relevant and persuasive. In *Brockamp*, the Supreme Court held that courts lacked the power to toll the time limitations for filing tax refund claims, reasoning in part that

> [t]he IRS processes more than 200 million tax returns each year. It issues more than 90 million refunds. To read an 'equitable tolling' exception into § 6511 could create serious administrative problems by forcing the IRS to respond to, and perhaps litigate, large numbers of late claims, accompanied by requests for 'equitable tolling' which upon close inspection might turn out to lack sufficient equitable justification. The nature and potential magnitude of the administrative problem suggests that Congress decided to pay the price of occasional unfairness in individual cases ... in order to maintain a more workable tax enforcement system. At the least it tells us that Congress would likely have wanted to decide explicitly whether, or just where and when, to expand the statute's limitation periods, rather than to delegate to the courts a generalized power to do so when-

ever a court concludes that equity so requires.

117 S.Ct. at 852 (citations omitted).

The situation here is analogous. Customs assesses and collects duties, taxes, and fees on imported merchandise; inspects targeted entries for compliance with United States trade laws and trade agreements; determines whether imported merchandise is admissible; and compiles trade statistics. *See* GAO Rep. No. GAO/AIMD–94–119 (June 15, 1994). In 1993, the volume of imported merchandise totaled approximately $550 billion requiring Customs to process over 27 million entries. *Id.* In this context, the Court is reticent to read an equitable tolling exception into § 1514. Similar to the Court in *Brockamp*, this Court is concerned that such an open-ended exception would disrupt the administrative process and render the system for collecting tariffs and duties less workable.

Thus, the presumption that the ninety-day period for filing a protest imposed by 19 U.S.C. § 1514(3) contains an equitable tolling exception has been rebutted by the language, structure, and purpose of 19 U.S.C. § 1514. The Court is therefore without jurisdiction to review JVC's admittedly untimely protest.

### CONCLUSION

For the foregoing reasons, the Court grants Customs' motion to dismiss for lack of subject-matter jurisdiction.